### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CARLOS MARINO,                    )

         **Plaintiff,**    ) **C.A. No** _____

**v.**                           )

DRUG ENFORCEMENT                 )
ADMINISTRATION (DEA) as a.       )
component of THE DEPARTMENT )
OF JUSTICE (DOJ),                )

         **Defendant.**    )


### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### A.    INTRODUCTORY STATEMENT

1. This is an action under the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552, as underlined, to order the production of
agency records, consisting of all information under indexing
number 3049901 in the Narcotics and Dangerous Drug Information
System (commonly and hereinafter called "NADDIS") relating to
Evereth Lopez (AKA Jose Lopez, Jose Evereth Lopez, Chuleta
Marcus, Marcos) from the date that number was issued until
December 7, 1997.

### B. JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to
5 U.S.C. § 552(a)(4)(B). Venue is proper in this district under the
same statute.

## C. PARTIES

3. Plaintiff Carlos Marino is the requester of the withheld information. He was also the defendant in <u>United States</u> <u>v.</u>

Marino, case no. 3:97 CR 84-RV; and the Petitioner in Marino v.
United States, case no. 3:00OV160/RV/MCR, in which it is alleged
below that the agencies acted negligently or otherwise improperly
in the performance of their duties.

4.    Defendant DEA is a component of the Department of
Justice (DOJ), which is an agency of the United States, and has
possession and control over the records that Plaintiff seeks.

### D. BACKGROUND FACTS

5.      Defendant DEA operates an all electronic, centralized, automated computer database for its records that is composed of data from investigative reports on individuals, businesses, vessels and selected airfields from federal, state and local criminal justice agencies, non-criminal justice agencies, and international records. The database is titled as the Narcotics and Dangerous Drugs Information System with the acronym NADDIS. Agents in all domestic offices have access to the information in NADDIS. Exhibit A. "NADDIS numbers are multi-digit numbers assigned to persons in whom the DEA has investigative interest." Fedrick v. U.S. Department of Justice, 984 F.Supp.2d 659, 663 (W.D.N.Y. 1997). The indexing section of a DEA report lists all persons that were mentioned in that DEA report. A NADDIS number by a name in a DEA report links that person or business to other DEA reports that mentions that person's name. Exhibit B.

6.      Evereth Lopez was born on ████████, SSN ████████, and has used the names Jose Evereth Lopez, Jose E. Lopez, Evereth E. Lopez, and the nicknames Chuleta, Marcus, and Marcos. Exhibit C; M M a t 3202-04.

7.

7.   The DEA prepared a report on August 16, 1997, describing the arrest of Evereth Lopez on August 15, 1997, which showed in the indexing section that he was in the NADDIS databank prior to that date and had been assigned number 3049901. Exhibit D.

8.   The DEA prepared a report two days later on August 18, 1997, describing the arrest of the Requester on August 17, 1997, which showed in the indexing section that he had been assigned NADDIS no. 4210827. Exhibit E.

9.   On August 26, 1997, the DEA prepared a Personal History Report on the Requester under the file title Evereth Lopez, which stated in entry no. 44 that the report relating to the Requestor's arrest was an initial, rather than a supplemental submission. Exhibit F.

10.  The DEA was the lead investigative agency in the actions relating to the prosecutions of Evereth Lopez and the Requester, and DEA Agent Mark Byler was the case agent assisting the government prior to and during the trial.

## E. EXHAUSTION OF ADMINISTRATIVE REMEDIES

By a letter dated May 4, 2004 to the DEA, Plaintiff

11.

requested a copy of all documents indexed under NADDIS no.

3049901. Plaintiff specifically limited the request to information

that is already in the public domain or was required to be made

public in public trials conducted on December 7-10, 1997, in the

Northern District of Florida styled as United States v. Marino,

case no. 3:97-CR-84-001-RV and in March - June 1998, in the

Eastern District of New York styled as United States v. Parafan-

Homen, case        no. 95-CR-0722. Plaintiff further requested

12.

that if any statutory exemptions are invoked under subsection (b)
to state what they are and why they are being invoked; and if any
portions of the requested documents are being withheld or redacted
because of those exemptions, to forward the segregable portions.
Exhibit G.

12.   On July 13, 2004, the DEA responded to the request for
records indexed under NADDIS no. 3049901 by neither confirming nor
denying the existence of any such records; and stating that before
the DEA can begin processing the request, it will be necessary to
provide either proof of death or an original privacy waiver for
NADDIS no. 3049901. Exhibit H.

13.   On August 9, 2004, the Requester mailed an
administrative appeal letter to the DOJ. The basis for the
administrative appeal was that the DOJ FOIA Reference Guide
specifically states that information about a living person can be
released without that person's consent when no privacy interest
would be invaded by disclosing the information, when the
information is already public or required to be made public or when
there is such a strong public interest in the disclosure  that it
overrides the individual's privacy interest." An additional basis
for the appeal was that the authority interpreting the exemption
claimed requires disclosure of any information actually revealed in
public, citing Parker v. Department of Justice, 934 F.2d 375, 379-

4

80 (D.C. Cir. 1991). The appeal further reiterated that the only information requested was that already put in the public domain in a public trial    conducted in June 1998, in the Eastern District of New York

14.

styled as <u>United States v. Pastor Parafan-Homen.</u> Exhibit I.

14.  On July 13, 2004, the DOJ affirmed the action of the DEA in refusing to confirm or deny the existence of records and documents indexed under NADDIS no. 3049901. The basis for the denial was that without an individual's consent, proof of death, or an overriding public interest, confirming or denying the existence of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy; and therefore, the information was exempt pursuant to 5 U.S.C. § 552(b)(7)(C). The DOJ also determined that the information was not appropriate for discretionary release pursuant to 5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices. Exhibit J.

### F. BASES FOR DISCLOSURE

15.    The public interest in disclosure of the requested information outweighs any privacy interest protected by Exemption 7(C) because the information is necessary to show that the DEA and the DOJ acted negligently or otherwise improperly in the performance of the investigation of Evereth Lopez and with respect to its obligations to disclose Brady material. As alleged below and as shown by competent evidence proffered with this complaint, the agencies acted improperly during the initial phase of the criminal proceeding by redacting the NADDIS number of Evereth Lopez in a token disclosure that was not inconsistent with their theory of the case (which by its very existence prior

16.

to his arrest and numerical sequence would have been exculpatory
to their case) and then explicitly denying the existence of any
investigative history when specifically asked in a pretrial motion.
The agencies acted negligently by not running a simple indexing
check of the names used by Evereth Lopez and his NADDIS number when
the initial arrest report showed he was already in the NADDIS
databanks (or improperly by not reporting the results of that
check), which would have undermined the factual basis for any
probable cause for the Requester's arrest, led to evidence that
could have been used to prove that the only evidence used to
corroborate Lopez's testimony from a separate investigation was
completely separate from the indicted offense and therefore not
admissible at that trial, and would have undermined the theory of
the case that Evereth Lopez was involved in drug trafficking for
only two years and was controlled by the Requester who was acting in
the role of a banker or "money man" for him.

16.  The agencies acted at least negligently in the criminal
proceeding by only disclosing records that were not inconsistent
with their theory of the case and withholding at least eleven
documents (and others not yet disclosed) that would have been
inconsistent with the government's theory and therefore would have
undermined guilt of the offense charged in the indictment.

17.  The agencies acted otherwise improperly in the

performance of their duties during the criminal proceeding by denying that they possessed any reports or interview notes of Evereth Lopez and affirmatively asserting that they did not take notes or make a report every time they interviewed him.

18.

18.   The agencies also acted improperly during the criminal proceeding by relying on evidence from a separate FBI investigation as direct evidence of the conspiracy charged in the indictment when they knew (or should have known) from that evidence, the withheld notes, and the information sought in this proceeding that the offense investigated by the FBI was not related in any way to the conspiracy charged in the indictment involving Evereth Lopez.

19.   The agencies acted negligently in the civil or collateral phase of the proceeding by failing to disclose with their purportedly voluntary disclosure all interview notes of Evereth Lopez where the existence of at least one set was fully corroborately by government statements in the Requester's PSI Report and the purportedly voluntary disclosures.

20.   The agencies acted otherwise improperly in the civil or collateral phase of the proceedings by falsely representing to the court that the testimony of Evereth Lopez was corroborated by a separate investigation, that his revelations in later trials were not known or revealed prior to the Requester's trial, and that they did not withhold any information in the trial or collateral proceedings.

21.   Notwithstanding the public's interest in the information to show that the agencies have acted negligently or

7

otherwise improperly in the performance of their duties, the

Requester has a right to the records he seeks under the public

domain exception to any statutory exemption because most, if not

all, of the information in those records was disclosed in a

22.

public trial and is being kept in a facility available to the general public. At the very least, the Requester is entitled to disclosure of all information that has now been made public (or a determination of how much of it is segregable from the non-public portions) because once there is disclosure, the information belongs to the general public and the statutory exemptions have no applicability.

## G. FACTS ESTABLISHING THAT THE AGENCIES ACTED NEGLIGENTLY OR OTHERWISE IMPROPERLY IN THE PERFORMANCE OF THEIR DUTIES

22. On August 25, 1997, an order was entered in United States v. Evereth Lopez, case no. 3:97cr84 RV Setting Trial and Other Pretrial Matters. The order required the Government to specifically provide within five (5) working days after a request from the defense: "Books, papers, documents, or copies or portions thereof,..., which are material to the preparation of the defendant's defense,...." Exhibit K-4.   The order also required the Government to provide within five (5) days after the defendant's arraignment or promptly after acquiring knowledge thereof: "All information and material known to the government which may be favorable to the defendant on the issue of guilt or punishment, without regard to materiality; that is within the scope of Brady v. Maryland, 373 U.S. 83 (1983) and United States v. Agurs, 427 U.S. 97 (1976)." Exhibit K-5. The order further stated that: "It shall be the duty of counsel for both sides to immediately reveal to opposing counsel all newly discovered

8

information, evidence, or other material within the scope of this
rule, and there is a continuing duty upon each attorney to

disclose by the speediest means available." Exhibit K-5.

23.   In response to the request for discovery pursuant to local rules and the <u>Order Setting Trial and Other Pre-Trial Matters,</u> the agencies only turned over a copy of the DEA 6's outlining the arrest of Evereth Lopez and the Requester previously described in ¶¶ 7 & 8, each of which had the NADDIS numbers (or their non-existence) blacked out. Exhibit L.


24.   In its response to <u>Other Disclosure Obligations of the Government</u> pursuant to local rules and the <u>Order Setting Trial and Other Pre-Trial Matters,</u> the agencies represented that:

> The United States does not have any
> information or material at this time which may
> be favorable to the defendant on the issue or
> guilt or punishment. <u>Brady v. Maryland,</u> 373
> U.S. 83 (1983); <u>United States</u> v. <u>Agurs,</u> 427
> U.S. 97 (1976).

Exhibit M at 5.


25.   In its response to the <u>Obligations of the Government,</u> pursuant to local rules and the <u>Order Setting Trial and Other Pre-Trial Matters</u> to preserve all rough notes, advise the defendant of its intent to introduce evidence in its case in chief, and to fully comply with 18 U.S.C. § 3500, the agencies represented:

> 1.   The United States has advised all agents
> and officers directly involved in the case to

preserve all rough notes

2.   The United States does have evidence to
introduce pursuant to Rule 404(b), Federal Rules
of Evidence. ...[T]he Federal Bureau of
investigation in Miami, Florida, during the time
frame of the conspiracy conducting an
investigation resulting in the production of
approximately 50 cassette recordings between the
defendant or co-conspirators not named in the
instant indictment and a cooperating witness....

The government by this notice
does not intend in any way to abandon its
intent to separately argue for admission the
information obtained as a result of the FBI
investigation in Miami targeting individuals,
including the defendant, as direct evidence of
the conspiracy charged in the instant
indictment.

Exhibit M at 6.

     26. The factual basis for the Government's argument that the
Miami FBI investigation constituted direct evidence of the
conspiracy charged in the indictment involving Evereth Lopez was
that the FBI's informant was going to testify that the Requester
inquired in an unrecorded conversation about drivers for tractor-
trailers to haul cocaine from Mexico to Miami. Exhibit O at 44-46 &
121-122. However, documents in the possession of the government
show that the informant had told the FBI that the conversation
relating to trucks involved a scheme that required the truck
driver to go two hours over the border into Mexico to a
"computerized" warehouse to obtain the drugs, which held a
stockpile of 5000 kilos. Exhibit P. On cross examination the FBI's
informant testified that the conversation with the Requester in

which he allegedly talked about using trucks that had the trailers modified to bring cocaine in was not memorialized anywhere other than in his head. Exhibit O at 122-23. That document and testimony based on that document would have been inherently inconsistent with the conspiracy known to the government by the withheld notes because they state that in the conspiracy involving Evereth Lopez that the drugs were loaded in the beams in flatbed trailers at a taller (Spanish for garage) in Guatemala (not in a warehouse two hours from the U.S. border),

that they changed drivers in Mexico City, and changed trailers and driver's at the U.S. border. Exhibit Q at government exhibits 11, 13, & 15. Furthermore, the withheld statements from Evereth Lopez stated that the Requester had no knowledge or control of the pick-up of the drugs from Mexico and that when he was allowed to listen to the tapes he was not familiar with the scheme or the participants. Id. at government exhibit 15.

27. After it became apparent that the Government was not going to fully comply with the Order Setting Trial and Other Pretrial Matters, counsel filed a motion entitled Request for Specific Kyles and Brady Information on October 14, 1997. Exhibit N. In relation to this action, the motion requested the following documents and information regarding Evereth Lopez:

> I.  Any report, document or information which details the criminal activities of the cooperating witness which were undertaken by him without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute;

> J.  ...NADDIS, ... and any other records available to the government reflecting the... investigative history of the cooperating witness.

Exhibit N at 4.

28. On October 24, 1997, the Government filed its response to the motion. With respect to the requests relating to this action, the Government filed the following responses:

> i. The government is unaware of any report, document, or information detailing criminal activities of any cooperating witnesses which were undertaken by the witnesses without the authority or approval of the government, but for which the government had elected formally or informally not to prosecute.

```
         *              *              *              *
         1. The government is unaware of any
         information concerning misconduct by either
         of the cooperating witness.
         *              *              *              *
         0. The government is unaware of any records
         maintained by law enforcement agencies
         relating to cooperating witness Lopez.
```

Exhibit R at 5-7.

    29.   The Government's theory of the case in <u>United States v.</u>
<u>Marino,</u> case no. 3:97-CR-84, was that Evereth Lopez was a
legitimate truck driver until two years prior to his arrest on
August 15, 1997, at which time he was controlled by the Requester
who was the banker or money man for the Pastor Parafan organization
in the United States. Exhibit 0 at 33-40, 110, 191-92; S at 6, 16 &
50.

    30.   During the trial it became apparent that there was a
second debriefing of Evereth Lopez on August 17, 1997, in which
the DEA took notes. However, after conferring with case agent
Byler of the DEA, the Government represented to the court that the
only notes he has are notes that the agent made when some calls
were made in Spanish and that the DEA did not take notes or compile
a report each time they interviewed Evereth Lopez. Exhibit R.
Later in the trial the Government disclosed three pages of
handwritten notes taken on August 17, 1997, that were not
inconsistent with the Government's theory of the case. Exhibit 0
at 191; Q at government's exhibit 6.

    31.   After the Requester's trial the government disclosed for
the first time in ¶ 19 of his PSI Report that Evereth Lopez was
debriefed on August 25, 1997, in which he advised agents that there
were two warehouses utilized by the organization for

32.

storage and processing of the loads of cocaine and for the assembly

of false compartments in vehicles. Exhibit T. In prior DEA 6's

(Exhibit E) and at trial, the Government represented that these

warehouses were located at Davie, Florida in Broward County and at

Opa Locka in Dade County.


    32.  Paragraph 20 of the PSI Report stated that on September

10, 1997, agents accompanied Evereth Lopez to Miami, Florida where

he identified the locations of these warehouses. Exhibit T.

Paragraph 20 of the PSI Report also indicated for the first time

that Evererth Lopez also indicated that the previous loads of

cocaine he transported were all taken to the warehouse located at

5846 SW 42nd Street in Miami, Florida. Id. However, the existence

of any previous loads and a third warehouse were not mentioned at

trial and would have undermined the theory of the case that Lopez

was only involved for two years and was controlled by the

Requester, but it does correspond with the withheld notes which

contained a sketch of third warehouse. Exhibit Q at government's

exhibit 7.


    33.  In connection with a motion to vacate pursuant to 28

U.S.C. § 2255 styled as Marino v. United States, case no.

3:00-CV-160, the Requester filed a motion entitled Motion for

Leave to Conduct Discovery and Motion for Production of

Documents. That motion requested, inter alia:

13

The notes taken during the interview of
Evereth Lopez by the New York prosecutor in
which the AUSA in the Northern District of
Florida and investigating agents were present
and taking notes and any DEA 6 in the New York
case linking government witness
Quintero, and Meneses to Evereth Lopez; The
statement given by Lopez on September 10,

1997, and Agent Byler's notes of that date
when Lopez was flown to Miami, directed the
agents to the different warehouses he used,
and told DEA Agent Byler that all loads were
taken to a third warehouse located at 5846
S.W. 42nd Street; The rough notes of any
statements of Evereth Lopez taken on August
25, 1997, September 10, 1997, September 24,
1997, October 16, 1997, and November 5, 1997,
including any DEA 6 memorializing these
statements; Records of all passports, other
names, and other social security or national
identity numbers used by Evereth Lopez during
the course of the conspiracy; Any and all
material or information the government had or
currently has in its possession that either
fell within the court's standing order filed
on August 25, 1997, or would prove one of the
claims made in the Petitioner's Motion to
Vacate.

Exhibit U at ¶¶ 1, 4, 6, 9 & 12. The memorandum of law and
showing of good cause for discovery with respect to the first
request made a showing that government witnesses Andres Meneses
and William Quintero implicated Evereth Lopez as a major
principal in the organization called "The Company" headed by
Pastor Parafan prior to the Requester's arrest and trial.

Exhibit U at 9-10. The showing of good cause with respect to the
request in ¶ 4 of the motion made a showing that DEA Agent Byler
testified at the detention hearing conducted on September 18,
1997, that Lopez told him that the Opa Locka warehouse was

obtained solely for the purpose of putting the false compartment
on the bus, that the Requester had obtained a statement dated
August 27, 1997, where someone drew a map of a warehouse on 5846
S.W. 42nd Street and labeled it "Third warehouse" and that Lopez
testified at trial that all loads came to the Davie and Opa Locka
warehouses. The showing of good cause with respect to the request
in ¶ 6 of the motion made a showing that he was in

possession of statements disclosed in the Pedraza trial that had
financial information in them, which would have been exculpatory in
the Requester's trial since Lopez testified that the Requester was
the money man who handled all of his financial needs. The showing
of good cause with respect to the request in ¶ 9 of the motion made
a showing that the government was in the possession of several
passports and identity documents used by Evereth Lopez, which were
used in the Parafan trial to impeach his testimony as to the dates
that he traveled to Colombia and Venezuela. Exhibit U at 17-18. The
showing of good cause with respect to the request in ¶ 12 of the
motion stated that since the Petitioner had shown that the
Government had failed to comply with the court's standing order by
identifying and supplying Rule 16 and Brady material that was
deliberately withheld that he should be allowed to examine the
government's files or depose any relevant witness to determine if
there is any other material available that would have constituted
Rule 16 or Brady material. Exhibit U at 19-20.

     34. After being ordered to respond to the Motion for Leave To
Conduct Discovery and Motion for Production of Documents, the
government delegated that task to DEA case Agent Mark Byler.
Exhibit V. In response to the request made in ¶ 1 of the motion,
Agent Byler averred that he took no notes during the interview of
Evereth Lopez with the New York Prosecutor and that no DEA-6
report of investigation was generated resulting from this
interview. Id.   at ¶ 3, However, Agent Byler failed to address
the request in that paragraph of any DEA-6 in the New York case

linking government witnesses Quintero and Meneses to Evereth Lopez. In response to the request made in ¶ 4 of the motion, Agent Byler averred that no formal interview was made of Lopez during the trip to Miami/Ft. Lauderale; that he was taken to South Florida to identity the locations of two warehouses, not three; one warehouse was in Davie and the other in Opa Locka, Florida; that he did not have any notes from this trip; and that he did not have any notes containing the addresses. In response to the request made in ¶ 6 of the motion, Agent Byler averred that all notes taken by him were left in the Pensacola, Florida Resident Office in the work file; that following the loss of the Lopez letter, they were ordered to provide all notes; that all notes were copied and given to defense counsel; that no additional notes exists; and that he did not document any of the debriefings in a DEA 6. In response to the request made in ¶ 9 of the motion with respect to the passports and various identities used by Evereth Lopez, Agent Byler averred that he had "no information at hand." <u>Id.</u> at ¶ 12. In response to the request made in ¶ 12 with respect to any information that fell within the court's standing order or would prove any claim made in the motion to vacate, Agent Byler averred that he "has no additional information." <u>Id.</u> at ¶ 15. Agent Byler further averred that

> Your Affiant is unaware of any witness who
> could have provided additional information to
> MARINO in reference to discovery at the time
> of his Trial. Your Affiant complied with all
> of the Court's rules in reference to
> discovery as it applies to MARINO. Your
> Affiant did not withhold any information then
> nor have I now withheld information.

<u>Id.</u> at ¶ 19.

35.   The agencies acted improperly in the criminal and the civil litigation because the government conceded that he did withhold information when it provided in the same pleading with his affidavit notes of at least 11 interviews of Evereth Lopez that took place prior to the Requester's trial. Exhibit S. The 11 interview notes were provided in subsequent trials after their existence was discovered in the Requester's trial and only voluntary disclosed after the Requester obtained them from the archives of those trials and presented them in the collateral litigation. The withheld notes could have been used to undermine the government's theory of the case because they would have either led to the information requested in this action and/or all of the persons and modus operandi described in those notes were already in the NADDIS databanks.

36.   The agencies also acted improperly because its disclosures in the civil litigation were not complete. Specifically, the agency failed to disclose any reports prepared by case agent Byler prepared on August 18, 1997) (2 reports) and on September 10, 1997 that he had denied existed. Exhibits W, X and Y. Agent Byler's DEA-6 reports prepared on August 18, 1997 regarding the arrest of Evereth Lopez and the inventory of the seizure of evidence during the arrest stated that approximately $6,6000.00 was seized by him from Evereth Lopez which was never disclosed at trial and was more than the $5,500.00 he told DEA Agent Gravat in the DEA-6 report of August 16, 1997 that was disclosed (Exhibit L) that he was to be paid upon delivery of the load. It also detailed the items that were seized from the truck

17

37.

and Lopez that could have been used to impeach his testimony as to when he made prior loads and the government's theory of the case that he was controlled by a money man. Agent Byler's report prepared on September 10, 1997 was exculpatory to the government's case because it referenced a debriefing that the government failed to disclose and could have been used to impeach Lopez'a testimony as to whether he had ever used the bus to haul drugs. All three of these reports had the NADDIS numbers of Lopez and the Requester listed in the indexing section, which by their very existence and numerical sequence would have been exculpatory because it would have led to information that Lopez was principal in a much larger organization and disproved the government's theory of the case that Lopez was a legitimate truck driver involved in drug trafficking for only two years.

37. In light of the fact that the government's purportedly voluntary disclosures (three years after being sentenced) were woefully incomplete and in light of the fact that those documents would have led to the documents the Requester seeks in this action that would have undermined the government's theory of the case that Evereth Lopez had been involved in drug trafficking for only two years and that the Requester's role was as a banker or money man for the Pastor Parafan organization in the United States, he filed a Motion to Compel Production of Documents. That motion sought the court's assistance in obtaining the following documents that were either subsumed in the original motion for leave to conduct discovery or came to light as a

result of the government's token "voluntary" disclosures:

1. Any DEA-6 in the case of <u>United States of America v. Pastor Parafan-Homen,</u> case no. 95-CR-0722 tried in the Eastern District of New York, or any other case, linking government witnesses William Quintero and Andres Meneses to Evereth Lopez.

2. All statements, documents and records relating to the movement of money into and out of the Pastor Parafan organization known to the Government or any of its agencies, including any statements describing how government witnesses William Quintero and Andres Meneses shipped money out of the United States to Colombia and other countries.

3. The notes of Case Agent Byler or any other agent of when Lopez was flown to Miami on September 10, 1997, directed other Government agents to various locations around Miami for three or four days, and told DEA Agent Byler that all loads were taken to a third warehouse located at 5846 S.W. 42nd Street, Miami, Florida.

4. The inventory of the contents of Lopez's residence where agents found 3 automatic weapons and the additional $100,000 that was hidden in a tool box in his house.

5. The records of other identities used by Lopez and records of the agent's efforts to locate other identities used by Evereth Lopez, and copies of Lopez's passports that he used to enter Colombia and Venezuela from November 1994 to January 1996.

6. Any reports of investigations of efforts to corroborate Lopez's story that the Defendant was a "money man" or banker for the Pastor Parafan organization in the United States, including...any other notes or reports made in the Government's efforts to investigate the financial activities of the Defendant,...

7. The notes of the interviews with Gilberto Olivera who is the person that Government's Exhibits 5, 6 & 23 states that Lopez was told to leave his trailer at his place of business to have it switched.

19

8.

8.  The notes of the telephone calls that Lopez made in Spanish where Trooper Deleon was translating.

9.  The memo agreement that was requested from Lopez's defense counsel from the DEA and/or the immunity agreement for all prior bad acts of Lopez during at least a decade of drug trafficking.

10. The inventory of the house that Lopez used for the activities of the conspiracy which he stated in Government Exhibits Nos. 11, 12 is where a vehicle was kept with a secret compartment for transporting money.

11. The inventory of the location where the printing machine equipment was kept and/or found.

12. The records of any bank accounts where Lopez or Humberto Santos kept money outside the United States.

13. The records from any government agency rendering assistance to Lopez in obtaining a renewal of his commercial driver's license immediately after his conviction.

14. The records authorizing the lien to be released on Lopez's residence which allowed him to transfer that property.

15 Any DEA-6's prepared with respect to Evereth Lopez other than Government's Exhibit 5 and any reports about Evereth Lopez under NADDIS No. 3049901.

16. Any Government records referencing to a warehouse located at 3200 79th Street, Miami, Florida that was once used as a tile warehouse.

Exhibit Z.

38. Good cause for production in the motion to compel was primarily based on representations of the prosecutor in the Parafan trial who debriefed Lopez in Florida (Government Exhibit

20

19) and stated that government witnesses Meneses and Quintero had given extensive statements before the Requester's trial

implicating Lopez, which should have either generated a NADDIS number or been entered under the number already established. Exhibit Z at 3. All of the other specific requests were either supported by the record or the withheld statements and would have undermined the government's money man or banker theory and that Lopez had worked for and been under the control of such a person for two years. However, the DEA declined to respond to the requests and allowed their statement that they did not withhold any information then or now to go uncorrected.

39.   The Requester filed a motion to vacate the judgment imposed in United States v. Marino, cases no. 3:97-CR-84 under 28 U.S.C. § 2255, styled as Marino v. United States, case no. 3:00-CV-160. The motion alleged constitutional violations which would have been proven by the withheld interview notes in conjunction with the information indexed under NADDIS no. 3049901 that although plead in various procedural postures, would have shown: (1) that the DEA knew or (should have known) that its theory of the case described in ¶ 29 supra was not true and controverted by verifying evidence; (2) that the evidence described in ¶ 25(2) supra involved a completely different offense not linked to the indicted offense in any way; and (3) that the DEA lacked probable cause for the Requester's arrest and therefore all physical evidence obtained therefrom should have been suppressed. Exhibit AA at pp. 6, 8-12, 22-23.

40.   The Government responded to the allegations in the motion to vacate by taking the position that the evidence described in ¶ 25(2) supra (that it should have known through the

21

41.

withheld interview notes involved a completely separate unindicted

offense) corroborated Lopez's testimony and supported confidence in

the outcome of the trial, and that any evidence that undermined

the government's theory of the case or impeached Lopez was totally

unknown to the government at the time of the trial. Exhibit BB at

4-5, 9-11 & 22-23.

     41.   The government acted negligently or otherwise improperly

by: (1) blacking out the NADDIS number of Evereth Lopez in the

DEA-6's prior to trial that by itself would have undermined the

government's theory of the case that Lopez had only been involved in

drug trafficking for two years because the computer had assigned him

to a number 1,160,92 entries earlier than the Requester who was

arrested only two days later; (2) failing to report the results of a

check of Evereth Lopez's name or number in the NADDIS databank, which

would have not only undermined the government's theory of the case

that he was under the control of a banker or money man but would have

also led to other evidence in the NADDIS databanks that would have

shown that he was a principal of the conspiracy; and (3) by failing

to report the results of a check of the names and modus operandi in

the withheld interview notes in the NADDIS databanks, which would not

only have undermined the government's theory of the case, but also

would have proven that the evidence described in ¶ 25 (2) supra

involved a separate unindicted conspiracy not admissible in that

trial and would have shown that the DEA lacked probable cause to

arrest the Requester.

     42.   The agencies also acted negligently or otherwise

22

43.

improperly because they knew (or should have known as early as
mid-October 1997) that Evereth Lopez was a principal and major
participant in a much larger organization headed by Pastor Parafan
(of which there was no evidence the Requester was involved with)
due to the fact that the name Pastor Parafan, his nicknames, the
name "The Company" and its modus operandi were mentioned
throughout the withheld interview notes of Evereth Lopez and the
name Parafan was apparently important and significant enough for
the United States Attorney to mention it in a memorandum to all
United States Attorneys on October 16, 1997. Exhibit CC.

43. The government's improper conduct was material because the
court found in resolving the motion to vacate that: (1) the failure to
disclose any interview notes beyond that involving Lopez's initial
interview was harmless because the Requester failed to show prejudice;
(2) the magistrate judge resolved the Brady claims on the basis of
whether the undisclosed notes would support the conclusion that the
Requester was not involved in the conspiracy or was not the John LNU
identified by Lopez, rather than on the basis of whether the
undisclosed notes could have been used to undermine the government's
theory of the case or would have led to other evidence that would have
undermined the government's theory of the case; (3) the government
could not foretell that Lopez's testimony would have been different in
later trials; (4) there is no proof for the assertion that the
government learned but failed to disclose any exculpatory or impeaching
information prior to the trial; (5) the Requester did not establish
that the government knew that

Lopez had been involved with drugs for more than two years; (6) the Requester did not show that the government used perjured testimony or failed to correct what it later learned was false testimony and that any falsehood was material; and (7) there was no evidence at the Requester's trial or before the trial suggesting that Lopez's testimony was false at the Requester's trial. Exhibit S at 42, 44-48, 50-51.

44.   The requested information indexed under NADDIS no. 3049901 would either prove or dispel the claims that the agency acted negligently or otherwise improperly sufficiently to outweigh any privacy interests in the information under the standard established in National Archives and Records Administration v. Favish, 541 U.S. 157, 124 S.Ct. 1570, 158 L.Ed.2d. 319 (2004) and Oguaju v. United States, 378 F.3d. 1115 (D.C. Cir. 2004), and provide the nexus to government knowledge that the magistrate found missing in the motion to vacate.

## H. FACT ESTABLISHING PUBLIC DOMAIN EXCEPTION TO STATUTORY EXEMPTIONS

45.   The records sought in this action were generated during a multi-state, multi-agency investigation of a Colombian organization whose members called itself "The Company." The modus operandi of the organization was to ship large quantities of cocaine via tractor trailers, of which the cocaine was secreted inside the beams of red-color steel framed flatbed trailers. Exhibit DD-FF.

46.   On July 25, 1995, DEA Agent John Seamans, who was assigned to Los Angeles, California; and DEA Agent Ephraim Post, who was

47.

assigned to the Long Island, New York resident office, testified

before a grand jury in the Eastern District of New York with respect

to the organization that called itself "The Company" that was headed

by Pastor Parafan in Bogota, Colombia. Agent Seaman, whose primary

duty was to investigate complex conspiracy organizations, testified

about how the transportation, distribution and money cells of the

organization operated; and how the drugs came out of Colombia into

Guatemala city, were stored there, and transported across the border

in a particular manner in the beams of red-colored flat-bed trailers.

Agent Seaman told the grand jury that he got involved in the

investigation of The Company from a two year investigation of a

Colombian distribution/transportation network in Southern California

where five persons were indicted, including Yul Venagas Gomez who

became a cooperating witness after his arrest. He stated that he was

able to take the information from Yul Venagas Gomez regarding the

method of operation and tie it to seven other state, federal and local

investigations throughout the United States; and that he identified

five cell heads he knew of during the time-frame. Both Agent Seamon

and Agent Post testified about information received from cooperating

witness William Quintero tying the Miami cell to The Company that was

connected to Lopez in the trial of Pastor Parafan. Exhibit EE & FF.

47. The name The Company was issued its own NADDIS number (3770357) and was purportedly headed by Pastor Parafan-Homen in Colombian and Venezuela. NADDIS information in 1995 on Parafan shows that he is the head of a Bogota CB cartel smuggling 1,000 to 2,000 kgs. monthly into the United States. Exhibit GG and HH.

48.   The names The Company, Pastor Parafan, his nickname P.P. or Pepe, and the modus operandi of The Company were mentioned throughout the interview notes of Evereth Lopez improperly withheld by the Government. Exhibit Q. Furthermore, all of the names mentioned in those notes already had NADDIS numbers indexed prior to December 1997; and therefore, would have led to the requested information but for the negligence or improprieties of the Government. Exhibits Q & XX.

49.  All of the information relating to the involvement of Evereth Lopez in The Company indexed under NADDIS number 3049901 was made public in a public trial of Pastor Parafn-Homen, case number 95-CR-722, in the Eastern District of New York in March thru June 1998 by government witnesses Andres Meneses Paz (AKA Fermin Gonzalez), William Quintero, Francisco Veilman, Yul Venegas-Gomez, Roberto Murgado, and by DEA and Case Agent Ephraim Post. Exhibit II.

50.  Evereth Lopez testified that he went to work for The Company in 1985 (Exhibit JJ at 3620); that he was in charge of warehouses for The Company in Houston from 1989 until 1991 (id. at 3638); that in the first year in Houston he shipped at least ten

trucks (id. at 3643); that in the beginning 1990 he went on behalf of The Company with Felix Gonzalez to the furniture company in Encenada, Mexico and Los Angeles to meet with Agustin Novellas (id. at 3645-56); and that when his replacement arrived he went on behalf of The Company in January thru February 1991 to open a warehouse in Miami where he received trucks from Texas that were coming from Mexico (id. at 3651-52).

51.

51.   DEA and Case Agent Ephraim Post testified that he knew that Evereth Lopez was involved with The Company as early as 1993, based on an entry in the diary of William Quintero noting a meeting between Evereth Lopez and Pastor Parafan. Exhibit B at 4046. Agent Post also testified that he conducted numerous debriefings of William Quintero and Andres Meneses prior to the arrest of Pastor Parafan on April 17, 1997. Id. at 4032. He only left one name out of the report who had something to do with drugs and Mr. Parafan. Id. at 4127.

52.   Government witness Andres Meneses testified that he was told by Pastor Parafan in 1989 to go to Miami and work for Evereth Lopez. Exhibit KK at 3198. He also testified that in 1989 that Lopez went to Houston to open an office there. Id. at 3212.

53.   On July 23 and 30, 1997, one month before the arrest of Evereth Lopez, Fermin Gonzalez (true name Andres Meneses) informed the agency that he worked for Jose Lopez in 1991, who was the boss of The Company in Miami. He stated that he was known as Marcus, was Colombian born but a U.S. citizen, and formerly in the U.S. Army. He stated that the cocaine arrived in flatbed trailers, delivered the

27

same modus operandi as seizures in 1992 & 1994, and that trailers arrived 4/91 through Guatemala. Exhibit QQ.

54.   Francisco Veilman was identified as one of the main drivers from Mexico, through Houston, Texas, and on to the warehouse in Southern California when Evereth Lopez was working as the person in charge of the Houston warehouses. Exhibits LL

55.

and 00. He was indicted in the Eastern District of New York, 94CR721, and his trial consolidated with that of Pastor Parafan upon motion of the government. At the time of consolidation the government had generated 30 boxes of discovery in his case alone. Exhibit II at 5. He eventually cooperated and testified at the trial of Pastor Parafan. Id. at 18. Therefore, the Requester believes that there exist records indexed under his NADDIS number that would reference NADDIS number 3049901.

55. Roberto Murgado (who was the brother-in-law of Agustin Novellas) was identified as a member of The Company operating in or through Houston, Texas at the time Evereth Lopez operated warehouses for The Company there. Exhibits MM, NN, and 00. He eventually cooperated and testified in the trial of Pastor Parafan. Exhibit II at 21. Therefore, the Requester believes that there exist records indexed under his NADDIS number that would reference NADDIS number 3049901.

56. Yul Vanegas-Gomez was identified as a member of The Company operating in or through Houston, Texas, at the time Evereth Lopez operated warehouses for The Company there. Exhibit LL. He began

28

cooperating in 1994 and went into the witness protection program.
Exhibit MM. Yul Vanegas-Govez and Evereth Lopez have similar NADDIS
number, which means that they were issued during the same time period
if the computer issues the numbers sequentially. Exhibit XX. Therefore,
the Requester believes that there exist records indexed under his
NADDIS number that would reference NADDIS number 3049901.


     57.

57.   The records the Requester seeks are part of the trial records in United States v. Pastor Parafan, case no. 95CR722. Exhibits RR, SS, TT and VV.

58.   All of the records relating to the investigation of The Company and the prosecution of Pastor Parafan are now in the public domain and can be reviewed by any member of the public. Exhibit TT.

## I. RELIEF REQUESTED

WHEREFORE, the Plaintiff requests that this Court:

(1)  Declare that the Requester has produced evidence sufficient that would warrant a belief by a reasonable person that the agencies have acted negligently or otherwise improperly with respect to their duties under Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d. 490 (1995), and the doctrines cited therein, to put the balance with any FIOA privacy interest into play;

(2)  Declare that the public's right to know whether Evereth Lopez was in the NADDIS databanks prior to August 15, 1997, and to expose how the highest level of drug trafficker can distribute tons of cocaine (Exhibit WW at 84), admit committing perjury in the

29

Requester's trial <u>(id.</u> at 113) and escape with only a 42 month

sentence (or less)(id. at 85) without any discernible or

commensurate benefit to the public, outweighs any privacy interest

he may have in that information;

(3) Declare that the DEA and the DOJ have acted negligently or

otherwise improperly in the performance of their duties and that

disclosure would either confirm or dispel the materiality of the

(4)

evidence purportedly supporting that negligence and improper

conduct;

(4) Declare that there are no privacy interests involved in

this action because the records (or at least the information

contained in those records) is already in the public domain;

(5) Declare that the Defendants' refusal to disclose the

records requested by the Plaintiff to be unlawful for the

foregoing reasons;

(6) Order the Defendants to provide the Plaintiff with all

records indexed under NADDIS number 3049901 that is assigned to

Jose Evereth Lopez;

(7) Award Plaintiff his cost and reasonable attorney's fees

in this action;

(8) Grant such other and further relief as the Court may

deem just and proper.

February ——— , 2006.            Respectfully submitted,


Brian W. Shaughnessy
913 M Street, N.W.
Suite 101
Washington, D.C. 20001

Attorney for Carlos Marino


30

### INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Description and location of NADDIS database |
| Exhibit B | Excerpt of testimony of DEA Agent Ephraim Post in trial of Pastor Parafan-Homen |
| Exhibit C | Comprehensive Report of names, addresses, social security numbers and driver's licenses used by Evereth Lopez. |
| Exhibit D | DEA 6 prepared on August 16, 1997, Agent Charles Gravat showing unredacted NADDIS no. 3049901 indexed to Evereth Lopez |
| Exhibit E | DEA 6 Re: Arrest of Carlos Marino on August 17, 1997 |
| Exhibit F | DEA Personal History Report for Carlos Marino under file title for Evereth Lopez |
| Exhibit G | Administrative letter-request number 04-1449-F |
| Exhibit H | DEA response to FOIA request for records indexed under NADDIS number 3049901, neither confirming nor denying the existence of any requested records |
| Exhibit I | Administrative appeal to Department of Justice (DOJ) |
| Exhibit J | Agency (DOJ) denial of administrative appeal |
| Exhibit K | Excerpts from Order Setting Trial and Other Pre-Trial Matters in Case No. 3:97-CR-84 |
| Exhibit L | DEA 6 Re: arrest of Evereth Lopez with NADDIS number redacted |
| Exhibit M | Excerpts from government's response |

to request for discovery and other
obligations of the government
pursuant to local rules and the Order
Setting Trial and Other Pre-Trial
Matters

## INDEX OF EXHIBIT (CONTINUED)

Exhibit N                    Excerpts from Request for Specific
                             Kyles and Brady Information

Exhibit O                    Excerpts from trial in United States
                             v. Marino, case no. 3:97-CR-84

Exhibit P                    FBI Report from Edwin Rivas relating
                             to unrecorded conversation about
                             transportation by truck

Exhibit Q                    Withheld interview notes of Evereth
                             Lopez in United States v. Marino,
                             case no. 3:97-CR-84

Exhibit R                    Excerpts from Government's Response
                             To Defendat's Request for Specific
                             Kyles and Brady Information

Exhibit S                    Excerpts from Report and
                             Recommendation of Magistrate Judge in
                             Marino v. United States,case  No.
                             3:00-CV-160

Exhibit T                    Excerpts from PS Report of Carlos
                             Marino

Exhibit U                    Excerpts from Motion for Leave to
                             Conduct Discovery and Motion for
                             Production of Documents filed in
                             Marino v. United States, case no.
                             3:00-CV-160

Exhibit V                    Affidavit of DEA Agent Mark Byler

Exhibit W                    DEA-6 Re: Arrest of Evereth Lopez and
                             Seizure of Exhibit 1

Exhibit X                    DEA-6 Re: Seizure of Exhibits N-4
                             through 4-40

Exhibit Y                        DEA-6 Re: Seizure of 1992 Van Hool
                                 Bus

Exhibit Z                        Motion to Compel Production of
                                 Documents

Exhibit AA                       Excerpts from Motion to Vacate, United
                                 States v. Marino, case No.3:97-CR-84


                    **INDEX OF EXHIBIT (CONTINUED)**


Exhibit BB                       Excerpts from Government's Response
                                 to Motion to Vacate

Exhibit CC                       Memorandum from Office of the
                                 Attorney General for All United
                                 States Attorneys Re: International
                                 Extradition of Justo Pastor Parafan-

Exhibit DD                       Report from DEA Agent John Seaman Re:
                                 Colombian Organization called The
                                 Company

Exhibit EE                       Grand Jury Testimony of DEA Agent
                                 Ephraim Post describing modus
                                 operandi of the Company

Exhibit FF                       Grand Jury Testimony of John Seaman
                                 describing modus operandi Of the
                                 Company

Exhibit GG                       DEA 6 Re: Debriefing of Fermin
                                 Gonzalez on 5-1-97 showing The
                                 Company NADDIS number in its
                                 indexing section

Exhibit HH                       DEA 6 Re: Debriefing of William
                                 Quintero on March 9, 1995

Exhibit II                       Excerpts from docket sheet in United
                                 States v. Parafan- Homen, case no.
                                 95-CR-722

Exhibit JJ                       Excerpts of testimony of Evereth
                                 Lopez

Exhibit KK                          Excerpts of testimony of Andres
                                    Meneses Paz (AKA Fermin Gonzalez)

Exhibit LL                          DEA 6 Re: Linkage information
                                    regarding The Company prepared on
                                    January 6, 1995

Exhibit MM                          DEA 6 Re: Continuing Criminal
                                    Enterprise (over 6 tons documented)
                                    by The Company prepared on February
                                    13, 1995


## INDEX OF EXHIBIT (CONTINUED)


Exhibit NN                          DEA 6 Re: Identification of co-
                                    conspirators regarding The Company
                                    and correction of Vanegas-Gomez
                                    prior information prepared on
                                    February 24, 1995

Exhibit OO                          DEA 6 Re: Identification information
                                    regarding The Company, Houston based
                                    transportation/ distribution cell
                                    prepared on May 17, 1995

Exhibit PP                          DEA 6 Re: Debriefing of Fermin
                                    Gonzalez on July 23, 1997 and July
                                    30, 1997

Exhibit QQ                          Rough Notes of Debriefing of Fermin
                                    Gonzalez stating that he worked for
                                    Lopez in 1991 who was the boss in
                                    Miami

Exhibit RR                          Government 3500 list in United
                                    States v. Pastor Parafan-Homen
                                    case no. 95-CR-722

Exhibit SS                              Government's witness list

Exhibit TT                              Government's exhibit list

Exhibit UU                          Defendant's exhibit list

Exhibit VV                          Information, location, public
                                    availability, and Requester's
                                    purchase of information claimed by
                                    Defendant DEA and DOJ to be
                                    protected by privacy exemptions

Exhibit WW                          Excerpts of testimony of Evereth
                                    Lopez in United States v. Pedraza,
                                    case no. 98-CR-101-RV in the
                                    Northern District of Florida

Exhibit XX                          List of Persons Associated
with

                                    The Company in the Numerical sequence
                                    in which they were Entered into the
                                    NADDIS Databanks