## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARLOS MARINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-1255 (RMU) |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Drug Enforcement Administration ("DEA"), respectfully moves for judgment as a matter of law.  In support of this motion, defendant respectfully refers the Court to the attached memorandum of points and authorities, statement of material facts not in genuine dispute, and the declaration of the defendant.

October 5, 2006

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-1249
(202) 514-8780 (facsimile)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CARLOS MARINO,                                )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )          Civil Action No. 06-1255 (RMU)
                                             )
DRUG ENFORCEMENT ADMINISTRATION,             )
                                             )
                    Defendant.               )
_____)

## <u>STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE</u>

Defendant DEA respectfully submits this statement of material facts as to which there are

no genuine disputes in accordance with this Court's Local Rule 7(h).

1. On May 4, 2004, plaintiff Carlos Marino sent a letter to the DEA requesting records

"generated by the DEA and/or under agency control pursuant to 5 U.S.C. § 552(a)(3)(A).

Plaintiff's request sought:

> a copy of all documents indexed under No. 3049901 of the Narcotics and
> Dangerous Drug Information System (NADDIS).  I am only requesting
> information that is already public information or was required to be made public
> in public trials conducted on December 1-10, 1997, in the Northern District of
> Florida styled as <u>United States v. Marino</u>, case no. 3:97cr84-001-RV and in June,
> 1998, in the Eastern District of New York styled as <u>United Stated [sic] v. Pastor
> Parafan Homen</u>.

<u>See</u> Declaration of Katherine Myrick ¶ 4 (Exhibit 1) ("Myrick Decl.").

2. DEA responded to plaintiff's request on May 11, 2004, asking that plaintiff provide

his complete name and date and place of birth.  Myrick Decl. ¶ 6.  Plaintiff responded by

providing the DEA with a Certification of Identity form (DOJ-361).  <u>Id.</u>

3.  After plaintiff provided the DEA with a completed Certification of Identity form, the

DEA advised plaintiff that his FOIA request "pertaining to another individual has been received

and will not be processed."  Myrick Decl. ¶ 7.  Specifically, the DEA's response states:

> This response neither confirms not denies the existence of any requested records.
> Before DEA can begin processing your request, it will be necessary for you to
> provide either proof of death or an original notarized authorization (privacy
> waiver) for NADDIS # 3049901.

Id.  The letter also advised plaintiff that the DEA would conduct a records search upon the

receipt of a proof of death or an original, notarized authorization from NADDIS # 3049901.  Id.

The DEA further advised plaintiff that these documents were prerequisites to any release:

> Without proof of death or an original notarized authorization, to confirm the
> existence of law enforcement records or information about another person is
> considered an unwarranted invasion of personal privacy.  Such records would be
> exempt from disclosure pursuant to Exemptions (b)(6) and/or (b)(7)(C).

Id.  Finally, the letter advised plaintiff of his appeal rights.  Id.

4.  By letter dated August 9, 2004, plaintiff appealed the DEA's refusal to process his

request.  Myrick Decl. ¶ 8.

5.  On August 20, 2004, the Office of Information and Privacy ("OIP") acknowledged

receipt of plaintiff's letter and assigned it number 04-2667.  Myrick Decl. ¶ 9.  OIP affirmed the

DEA's decision on January 18, 2005, stating that

> Without an individual's consent, proof of death, official acknowledgment of an
> investigation, or an overriding public interest, confirming or denying the
> existence of law enforcement records concerning an individual could reasonably
> be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. §
> 552 (b)(7)(C).

Myrick Decl. ¶ 10.

October 5, 2006                              Respectfully submitted,


                                             _____/s/_____
                                             JEFFREY A. TAYLOR, D.C. Bar # 489610
                                             United States Attorney


                                             _____/s/_____
                                             RUDOLPH CONTRERAS, D.C. Bar # 434122
                                             Assistant United States Attorney


                                             _____/s/_____
                                             JOHN F. HENAULT, D.C. Bar # 472590
                                             Assistant United States Attorney
                                             Civil Division
                                             555 4th Street, N.W.
                                             Washington, D.C. 20530
                                             (202) 307-1249
                                             (202) 514-8780 (facsimile)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CARLOS MARINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1255 (RMU) |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### <u>DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT</u>

Plaintiff Carlos Marino filed this action against the DEA seeking declaratory and injunctive relief pursuant to the Freedom of Information Act.  In its "introductory statement," the complaint identifies the records he seeks in this action as "all information under the indexing number 304991 in the Narcotics and Dangerous Drug Information System ["NADDIS"]. . . relating to Evereth Lopez (AKA Jose Lopez, Jose Evereth Lopez, Chuleta Marcus, Marcos) from the date that number was issued until December 7, 1997."[1]  Compl. ¶ 1.  In contrast to this statement is paragraph 6 of the "relief requested" section, which states, "Order the Defendants to provide the Plaintiff with all records indexed under NADDIS number 304991 that is assigned to Jose Evereth Lopez."  Notwithstanding that plaintiff's complaint asserts that he is seeking information relating to a NADDIS number ***and*** Mr. Lopez, plaintiff's FOIA request sought ***only*** information relating to a specific NADDIS number.

The "relief requested" section of plaintiff's complaint contains eight paragraphs describing the "declaratory relief" plaintiff seeks.  In addition to his request that the Court

---

[1]  For the reasons set forth herein, the DEA will neither confirm nor deny that the NADDIS number at issue belongs to Mr. Lopez, that it has records relating to Mr. Lopez or that it has records relating to the specific NADDIS number.

declare that the DEA improperly withheld documents, plaintiff requests declarations relating to

things he identifies as injustices between him and the criminal justice system.  For example,

plaintiff requests that the Court issue the following declaratory judgments:  declare that he has

produced evidence to show that the DEA acted negligently or otherwise improperly; declare that

the public's right to know information relating to Evereth Lopez and whether or not he

committed perjury at plaintiff's trial and then received a sentence of only 43 months outweigh

any privacy interest; and declare that the DEA and DOJ have acted negligently or otherwise

improperly in the performance of their duties and that disclosure of information relating to Mr.

Lopez would confirm or dispel the materiality of evidence purportedly supporting that

negligence and improper conduct.  Compl. pp. 29-30, ¶¶ 1, 2, & 3 of "Relief Requested."

    Moreover, in contrast to the requirements that a complaint contain a "short and plain

statement," see Fed. R. Civ. P. 8(a), much of the body of plaintiff's complaint and its exhibits

address matters related to the criminal prosecution of plaintiff and various Columbian drug

traffickers, as well as procedural matters arising during those prosecutions.

    This action, similar to plaintiff's original Freedom of Information Act request, is nothing

more than an improper and fundamentally flawed attempt to obtain documents, that may or may

not exist, from the Drug Enforcement Administration regarding a third party.  As explained in

detail below, the DEA properly responded to plaintiff's request by informing him that, without a

certificate of death or an original, notarized Privacy Act authorization form, the DEA would

neither confirm nor deny the existence of records relating to NADDIS # 3049901.  Moreover,

even if the DEA has records relating to NADDIS # 3049901, those records are exempt from

disclosure under FOIA. Accordingly, defendant respectfully requests that the Court enter summary judgment in its favor.

## FACTS

Defendant hereby incorporates its Statement of Material Facts not in Dispute, as well as the accompanying declaration, as if set forth herein.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.

In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable

jury to find" in its favor).  In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'"  477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

## II.     SUMMARY JUDGMENT IN FOIA CASES

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.[2]  <u>See</u> <u>Cappabianca v. Commissioner, U.S.</u>

<u>Customs Serv.</u>, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (<u>citing</u> <u>Miscavige v. IRS</u>, 2 F.3d 366,

368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it

demonstrates that no material facts are in dispute and that each document that falls within the

class requested either has been produced, is unidentifiable, or is exempt from disclosure.  <u>See</u>

<u>Students Against Genocide v. Dept. of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001); <u>Weisberg v.</u>

<u>U.S. Dept. of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).

As a practical matter, this standard for summary judgment means that the agency must

provide the Court and the plaintiff with affidavits or declarations and other evidence which show

that the documents are exempt from disclosure.  <u>See, e.g.</u>, <u>Center for Nat'l Security Studies v.</u>

<u>U.S. Dep't of Justice</u>, 331 F.3d 918, 927 (D.C. Cir. 2003); <u>Hayden v. National Security Agency</u>

<u>Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980).

Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency

affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not

---

[2] For purposes of summary judgment, an agency's decision to withhold information from a
FOIA requester is subject to <u>de novo</u> review by the courts.  <u>Hayden v. National Security Agency</u>
<u>Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980).

impugned by evidence . . . of bad faith on the part of the agency.'" <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp.2d 10, 16 (D.D.C. 2000) (<u>quoting</u> <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983)); <u>see also</u> <u>Nat'l Security Studies</u>, 331 F.3d at 927.

Typically, the agency's declarations or affidavits are referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1974). There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976 F. Supp. 23, 35 (D.D.C. 1997).

Where the agency responds that it can neither confirm nor deny the existence of responsive records, however, courts do not require a detailed listing of the responsive records, but instead require a publicly filed affidavit or declaration with a detailed explanation of why the "Glomar" response is necessary to support the agency's claim of a FOIA exemption from release.  <u>See</u> <u>Burke v. U.S. Dep't of Justice</u>, 1999 WL 1032814 (D.D.C. Sept. 30, 1999) (citing <u>Enzinna v. U.S. Dep't of Justice</u>, 1997 WL 404327, *2 (D.C. Cir. 1997)); <u>Wheeler v. CIA</u>, 2003 WL 21675312, *5 (D.D.C. June 4, 2003) (quoting <u>Phillippi v. CIA</u>, 546 F.2d 1325 (D.C. Cir. 1981)).  <u>See generally</u> <u>Minier v. Central Intelligence Agency</u>, 88 F.3d 796, 800 (9th Cir. 1996) (approving use of Glomar response where agency concession that records existed would itself provide the information that the exemption seeks to protect); <u>Nation Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 894 n.8 (D.C. Cir. 1995) (same); <u>Hunt v. Central Intelligence Agency</u>, 981 F.2d 1116, 1118 (9th Cir. 1992); <u>Phillippi v. Central Intelligence Agency</u>, 655 F.2d 1325 (first case authorizing such response, named after a secret U.S. government ocean vessel, the *Hughes Glomar Explorer*).

### III.    THE DEA PROPERLY INVOKED EXCEPTION 7(C)

Through its exemptions, FOIA does not require production of:

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7).  See also 5 U.S.C. § 552a (j)(2) (Privacy Act).  This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  See, e.g., U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 762-71 (1989) (privacy interests in a person's police arrest record); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).

For records to fit in to Exemption 7 as an initial matter, those records must be compiled for law enforcement purpose – "the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can be fairly characterized as an enforcement proceeding."  Jefferson v. Dept. of Justice, 284 F.2d 172, 176-77 (D.C. Cir. 2002) (internal citations and quotations omitted).  If a record is compiled "in connection with investigations that focus directly on specific illegal acts which could result in civil or criminal sanctions," that record is compiled for law enforcement purposes.  Id.

As explained in the Myrick Declaration, the mission of the DEA includes enforcing the controlled substances laws and regulations of the United States and conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States.  Myrick Decl. ¶ 12.  Records related to the DEA's

6

criminal law enforcement mission are reasonably likely to be found in the DEA's Investigative

Reporting and Filing System (IRFS), JUSTICE/DEA-008, a Privacy Act System of Records.[3]

Myrick Decl. ¶ 12.  The DEA's Narcotics and Dangerous Drugs Information System (NADDIS)

is a means by which the DEA retrieves investigative reports and information from IRFS.  Id.  In

fact, the United States Supreme Court has recognized that NADDIS is "a federal database of

known and suspected drug traffickers." Ornelas v. U.S., 517 U.S. 690, 692 (1996); Williams v.

U.S. Dept. of Justice, 851 F.2d 1502, 1502, 1988 WL 76590, *1 (D.C. Cir. May 18, 1998)

("NADDIS numbers are assigned to drug violators and suspects known to the Drug Enforcement

Administration."); U.S. v. Brock, 782 F.2d 1442, 1445 (7th Cir. 1986) (NADDIS "is used by the

DEA and includes information about individuals suspected of being involved in illegal drug transactions")

Thus, plaintiff's request for records relating to NADDIS # 3049901 relates to records compiled

for law enforcement purposes.

  To determine whether or not records compiled for law enforcement purposes are exempt

from disclosure pursuant to Exemption 7(C), courts employ a balancing test weighing the

privacy interests of the affected individuals against the public interest in disclosure of the

information.  See, e.g., Oguaju v. United States, 288 F.3d 448 (D.C. Cir. 2002).  Courts are quick

to point out, however, that the public interest in disclosure refers to "open[ing] agency action to

the light of public scrutiny," id. at 450 (quoting Reporter's Comm., 489 U.S. at 772), and "it

does not include helping an individual obtain information for his personal use," id. (quoting

---

[3] By regulation,  JUSTICE/DEA-008 is exempt pursuant to the provisions of 5 U.S.C.
§552a(j)(2) from subsections (c)(3) and (4); (d)(1), (2), (3), and (4); (e)(1), (2), and (3), (e)(5),
(e)(8); and (g) of the Privacy Act.  It is also exempt pursuant to the provisions of 5 U.S.C.
§552a(k)(1) from subsections (c)(3); (d)(1), (2), (3), and (4); and (e)(1) of the Privacy Act.  28
C.F.R. §16.98(c).  Myrick Decl. ¶ 13.

<u>Mays v. DEA</u>, 234 F.3d 1324, 1327 (D.C. Cir. 2000)).  <u>See also</u> <u>Mays v. DEA</u>, 234 F.2d 1324,

1327 (D.C. Cir. 2000).  The <u>Oguaju</u> court bluntly rejected the requestor's argument that the

public interest was served in releasing information that might aid him in his defense against

criminal charges: "Oguaju's personal stake in using the requested records to attack his

convictions *does not count* in the calculation of the public interest."  288 F.3d at 450 (emphasis

added).  On the other side of the balance, privacy interests of individuals involved in criminal

investigations are routinely and properly accorded weight by the courts.  <u>See, e.g.</u>, <u>Reporter's</u>

<u>Committee</u> 489 U.S. at 762-71; <u>Oguaju</u> 288 F.3d at 451 (privacy interest of prison escapee);

<u>Nation Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995).

　　　In this case, plaintiff alleges that the disclosure of the information is necessary to show

that the DEA acted "negligently in the criminal proceeding by disclosing records that were not

inconsistent with their theory of the case . . . ," and that the DEA "acted improperly in the

performance of their duties during the criminal proceeding . . . ."  Compl. ¶¶ 16-17.  In sum,

plaintiff seeks the documents for no other purpose than to challenge his conviction.[4]  Compl. ¶¶

22-44.  Plaintiff's allegations notwithstanding, his stated purpose for his desire to obtain

documents relating to NADDIS number 3049901  "does not count" as a public interest.  <u>Oguaju</u>,

288 F.3d at 450.

　　　Courts consistently recognize the need to protect the privacy of individuals involved in

criminal investigations and Plaintiff's request seeks nothing but information relating to a

NADDIS number not assigned to plaintiff, and instead utilized by the DEA to identify a person

---

　　　[4] Notably, plaintiff's complaint established that his allegations of wrongdoing by the DEA
have been rejected by both the Court trying his criminal case and the Court that heard his <u>habeas</u>
claims.  Compl. ¶¶ 22-44.

or thing involved in criminal investigations.  In fact, the categorical application of the balancing

test is favored by courts where the nature of the request so clearly fits into a FOIA exemption.

See Flores v. U.S. Dep't of Justice, No. 03-2105 (RMU) (D.D.C. Feb. 7, 2005) (Urbina, J.).  See

also SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991) (quoting Reporters'

Committee, 489 U.S. at 776).  This is particularly so in cases where the agency used a Glomar

response.  See, e.g., Oguaju 288 F.3d at 450-51; Nation Magazine v. U.S. Customs Service, 71

F.3d 885, 893, 895-896 (D.C. Cir. 1995); Burke v. U.S. Dep't of Justice, 1999 WL 1032814, *5

(D.D.C. Sept. 30, 1999).  Although the court in Nation Magazine indicated that categorical

assertions of Exemption 7(C) to support Glomar responses has its "limits," 71 F.3d at 885, the

court permitted such categorical responses when "the range of circumstances included in the

category 'characteristically support[s] an inference' that the statutory requirements are

satisfied[.]"  On these facts, there can be but one inference drawn—that all information requested

by Plaintiff falls squarely within Exemption 7(C) and so should not be disclosed.

Plaintiff seeks to end-run the 7(C) exemption by asserting that the documents he is

requesting were made public in two criminal trials or "were required to be made public" in those

trials.  The simple fact that the requester might be able to figure out the individual's identity

from the NADDIS number, or that the identities have been disclosed elsewhere, does not

diminish the privacy interests of the subject of the NADDIS number at issue.  Reporter's

Comm., 489 U.S. at 770 ("the fact that an event if not wholly private does not mean that an

individual has no interest in limiting disclosure of dissemination of the information"); Fitzgibbon

v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dep't of Justice, 745 F.2d 1476, 1491 (D.C.

Cir. 1984).  Instead, the case law is clear that the privacy interests of any person whose name

may appear in law enforcement records are not diminished by the person's identity being revealed, even by testifying at the criminal trial of the requester. See, e.g., Coleman v. FBI, 13 F. Supp. 2d 75, 80 (D.D.C. 1998) (Lamberth, J.); see also Burge v. Eastburn, 934 F.2d 579 (5th Cir. 1991) (Plaintiff "argue[d] that the persons who purportedly gave statements to the FBI have waived their privacy right by testifying about the murder in open court. This argument is without merit.") (citing DOJ v. Reporters Committee, 489 U.S. 749 (1989)). Moreover, simply because documents were released pursuant to specific legal requirements during a criminal trial, that release does not mean that the documents are "in the public domain" and releasable pursuant to FOIA. See Cottone v. Reno, 193 F.3d 550, 556 (D.C. Cir. 1999) (government's disclosure of information to a single party pursuant to its obligations under Brady "simply does not [cause the information to] enter the public domain"); Heggestad v. Dept of Justice, 182 F. Supp.2d 1, 11 n.8 (D.D.C. 2000) (fact that defendant was provided a copy of grand jury transcript in criminal proceeding is insufficient to show that material is in "public domain.").

## IV.    DEA DECLARATION

DEA has submitted in support of this motion the declaration of Katherine Myrick, attached as Exhibit 1. Ms. Myrick is the Chief of the DEA's Freedom of Information/Records Management Section, Operations Unit ("SARO"). Myrick Decl. ¶ 1. Due to the nature of her official duties, she is familiar with the procedures routinely followed by DEA in responding to FOIA requests and with the particular actions taken by DEA in responding to Plaintiff's request. Myrick Decl. ¶¶ 1 & 3. In describing the DEA's response to Plaintiff's request, Ms. Myrick's declaration is sufficiently detailed and non-conclusory and provides the court with an adequate basis for review of DEA's response to Plaintiff's request. See id. Plaintiff's Complaint includes

no evidence impugning Ms. Myrick's declaration and there is no evidence of bad faith by the agency in this matter.

The declaration of Ms. Myrick explains that she is also familiar with the agency's policies regarding the use of the Glomar response, and why the DEA used it to deny Plaintiff's request. Myrick Decl. ¶¶ 1, 3, 11-19. This explanation is as detailed as it could be without divulging whether the agency actually has any responsive records, and so it provides the court with an adequate basis for review of DEA's use of the Glomar response to Plaintiff's request. See id..

## V. DEA IS NOT REQUIRED TO CONDUCT A SEARCH FOR RESPONSIVE DOCUMENTS

When the agency has adequately justified its use of the Glomar response to support a FOIA exemption, the courts do not require the agency to conduct a search for responsive records. See Wheeler, 2003 WL 21675312 at *8. In this case, the DEA could not confirm or deny the existence of responsive records without revealing whether the specified NADDIS number at issue had become involved in a DEA investigation, or the identity of the person identified by the particular NADDIS number. This admission could itself have violated the individual's privacy, contrary to the purpose of Exemption 7(C), making the Glomar response appropriate. In light of the appropriateness of the Glomar response, and the agency's justification for it in the attached Declaration, it would be wasteful to incur the costs of the search for records that could not be released anyway.

11

**VI    SEGREGABILITY**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua sponte</u>." <u>Trans-Pacific Policing Agreement v. U. S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. U. S. Dep't of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977). In light of the agency's Glomar response, however, segregating or redacting information is inappropriate because even a completely redacted document would reveal the existence of responsive documents and defeat the purpose of the Glomar response. <u>See</u> Myrick Decl. ¶¶ 17-19.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendant Drug Enforcement Administration respectfully requests that the Court enter judgment in its favor.

October 5, 2006                          Respectfully submitted,


                                         _____/s/_____
                                         JEFFREY A. TAYLOR, D.C. Bar # 489610
                                         United States Attorney


                                         _____/s/_____
                                         RUDOLPH CONTRERAS, D.C. Bar # 434122
                                         Assistant United States Attorney


                                         _____/s/_____
                                         JOHN F. HENAULT, D.C. Bar # 472590
                                         Assistant United States Attorney
                                         Civil Division
                                         555 4th Street, N.W.
                                         Washington, D.C. 20530
                                         (202) 307-1249
                                         (202) 514-8780 (facsimile)