**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GRISELLE MARINO, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 06-1255 (GK) |
| DRUG ENFORCEMENT ADMINISTATION, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Plaintiff Griselle Marino ("Plaintiff" or "Marino") brings this action against the United States Drug Enforcement Administration ("DEA" or "the Government") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Marino seeks documents related to a Government cooperator who testified against her deceased ex-husband, Carlos Marino, at his trial for drug conspiracy in 1997.

This matter is before the Court on the DEA's Renewed Motion for Summary Judgment [Dkt. No. 65]. Upon consideration of the Motion, Opposition, Reply, Sur-reply, oral argument at the Motion Hearing of February 5, 2014, and the entire record herein, and for the reasons stated below, the Government's Motion is **denied.**

# I.   BACKGROUND

## A.   Factual Background[1]

### 1.   The Criminal Prosecution

In 1997, Carlos Marino was convicted of narcotics conspiracy in the Northern District of Florida and sentenced to 365 months in prison. The Government's primary witness at his trial was a co-conspirator named Jose Everth Lopez ("Lopez"). Lopez testified that he and Carlos Marino worked for an international drug importation and distribution ring known as the "Company," which was run out of Bogota, Columbia by a man named Pastor Parafan-Homen. Pl.'s Opp'n Ex. B (Trial Tr.) at 16, 20 [Dkt. No. 66-5 at ECF pp. 6-7].

Lopez stated that his job was to transport cocaine in flat-bed trailer trucks from Texas to South Florida, where he was paid by Carlos Marino. Id. at 16, 20-27, 31 [Dkt. No. 66-5 at ECF pp. 6-15]. Lopez further testified that Carlos Marino was the "banker" or "money man" of the organization, and that whenever money was spent by the conspiracy - whether for

---

[1] Unless otherwise noted, the facts are undisputed and drawn either from the parties' briefs, the Complaint, or the Government's Statement of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h). For ease of reference, the Court's citations to the exhibits appended to Plaintiff's Opposition include, in brackets, the page numbers supplied by the Court's Electronic Case Filing ("ECF") system.

drivers, vehicles, warehouse space, or other expenses – it came from Marino. Id. at 33, 36, 39, 191-92 [Dkt. No. 66-5 at ECF pp. 3-4, 18, 21-22]; see also Pl.'s Opp'n Ex. F (Order, Report and Recommendation on § 2255 petition in United States v. Marino, 3:97cr84/RV (N.D. Fla. Oct. 4, 2002)) ("Report & Recommendation") at 6 [Dkt. No. 66-9].

The Government relied heavily on Lopez's testimony in its opening and closing remarks and at sentencing. As Magistrate Judge M. Casey Rodgers later observed on collateral review, "Lopez was the government's key witness at trial and was the primary witness who testified about defendant's involvement in a conspiracy that actually moved cocaine." Pl.'s Opp'n Ex. F (Report and Recommendation) at 7 [Dkt. No. 66-9]. Although evidence from an unrelated investigation revealed that Carlos Marino had been engaged in separate discussions with a confidential informant named Edwin Rivas about importing cocaine into the United States through the Miami airport, this plan was never carried out, and there was little evidence linking it to Parafan-Homen's group. See id. ("CI Rivas testified about discussions he had with the defendant about cocaine importation, but the importation plans were never realized."),

At sentencing, the trial Judge relied on Lopez's testimony to conclude that Carlos Marino was a "station manager in Miami"

-3-

who "transfer[red] operations from Mexico and Houston and other parts of the United States, including a number of major cities, east coast and west coast." See Pl.'s Opp'n Ex. B (Sentencing Tr.) at 11:20-12:24 [Dkt. No. 66-5 at ECF pp. 29-30]. This finding provided the basis for the Judge to impose a three-point sentencing enhancement under the Sentencing Guidelines. Id.

Lopez later admitted at the 1998 trial of Parafan-Homen in the Eastern District of New York that he lied multiple times at Carlos Marino's trial. Specifically, at Marino's trial, Lopez purported to be a low-level participant recruited to work for the Company in late 1995, whereas he later admitted that he had been involved in the conspiracy since 1988, had met personally with Parafan-Homen on several occasions, and had attended a small meeting of high-level conspirators in Bogota, Columbia in 1994 to discuss reorganizing the criminal enterprise. See Pl.'s Opp'n Ex. C at 3623-3627, 3665-66. (trial transcript in United States v. Pastor Parafan-Homen, CR 95-0722) [Dkt. No. 66-6].

### 2.    Collateral Proceedings

After his conviction was affirmed on direct appeal in 1999, Carlos Marino filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. See Pl.'s Opp'n Ex. A (Joint Appendix) at 271 [Dkt. No. 66-2]. He argued, inter alia, that the Government committed misconduct by failing to correct

-4-

Lopez's perjured testimony at his trial.  Id. at 291-98 [Dkt. No. 66-3].  He further asserted that the Government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), by suppressing notes of pre-trial interviews with Lopez, which could have been used to impeach Lopez at trial and demonstrate that his involvement in the conspiracy was more extensive than he depicted.  Id. at 277-282, 284-90 [Dkt. No. 66-2].  Carlos Marino also claimed that the documents suppressed by the Government would have shown that he (Carlos Marino) was not involved in any of the operations of the conspiracy outside of Miami, and that it was Lopez, not Marino, who was a manager of the Parafen-Homen organization.  Id. at 296-298 [Dkt. No. 66-3].

On October 4, 2002, Magistrate Judge Rodgers issued his Report and Recommendation recommending that Carlos Marino's motion for collateral relief be denied.  While acknowledging that "Lopez's testimony at the Parafan trial, in particular that detailing his historical involvement in the conspiracy, was 'vastly different' from that given at the defendant's trial," he determined that the "differences did not absolve defendant of any responsibility or involvement in the conspiracy."  Pl.'s Opp'n Ex. F (Report and Recommendation) at 53 [Dkt. No. 66-9].  He further reasoned that "the jury was on notice that Lopez was not the most credible of witnesses" because there was evidence

at trial "that Lopez had lied on more than one occasion to government agents[.]" Id. at 52.  He then concluded that the falsehoods in Lopez's testimony did not warrant collateral relief because they either were "not central to the jury's assessment of defendant's role in the offense, or were unknown to the government at the time of defendant's trial." Id. at 51.

### 3.   The FOIA Request

In May 2004, Carlos Marino, acting pro se, submitted a FOIA request to the DEA to obtain "a copy of all documents indexed under No. 3049901 of the [DEA's] Narcotics and Dangerous Drug Information System (NADDIS)." Letter from Marino to DEA FOIA/PA Unit, dated May 4, 2004 ("FOIA Request") [Dkt. No. 5-1, Ex. A]. NADDIS numbers are unique multi-digit numbers that the DEA assigns to the subjects of its investigations. They permit the DEA to "retrieve[] investigative reports and information" from its investigative database regarding a subject of interest without searching by name. See First Supplemental Decl. of Katherine L. Myrick ("First Supp. Myrick Decl.") ¶ 6 [Dkt. No. 65-2]. It is undisputed that Carlos Marino suspected that 3049901 was the NADDIS number assigned to Lopez, and therefore, his request effectively sought the DEA's investigative file on Lopez.

The DEA categorically denied Carlos Marino's request. Its response took the form of a "Glomar response," in which an agency states that it "can neither confirm nor deny" the existence of responsive records on the grounds that to do so would reveal information exempt from disclosure under FOIA.[2]

The DEA reasoned that disclosing even the existence of responsive documents would invade the privacy interest of the individual assigned to NADDIS number 3049901 by revealing that he or she had been the subject of a DEA investigation. The agency therefore informed Carlos Marino that it would not process his request unless he provided either proof of death of the individual assigned to NADDIS number 3049901, or an original notarized privacy waiver. See Undated Letter from DEA to Marino [Dkt. No. 5-1, Ex. D].

On August 9, 2004, Carlos Marino filed an administrative appeal with the Department of Justice's ("DOJ"'s) Office of Information and Privacy ("OIP"), arguing that "no privacy interest would be invaded by disclosing the information" he sought because, as he pointed out in his original request, that information had already been put into the public domain at his

---

[2] The term "Glomar response" is derived from a case in which a requester sought records relating to an underwater sea craft called the "Glomar Explorer." Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 888 n.2 (D.C. Cir. 1995) (citing Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976)).

trial and the trial of Parafan-Homen.   Letter from Carlos Marino to OIP, dated Aug. 9, 2004, at 2 [Dkt. No. 5-1, Ex. E].   On January 18, 2005, the OIP affirmed the denial of the request, again stating that to confirm or deny the existence of records "could reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption 7(C).   Letter from OIP to Carlos Marino, dated Jan. 18, 2005 [Dkt. No. 5-1, Ex. G].[3]

### B.   Procedural Background

On July 12, 2006, Carlos Marino filed this action seeking judicial review of the DEA's decision.   [Dkt. No. 1].   On October 5, 2006, the DEA filed its first Motion for Summary Judgment. [Dkt. No. 5].   On March 16, 2007, Judge Ricardo Urbina, the District Court Judge previously assigned to this case, summarily granted the Government's first Motion for Summary Judgment after Carlos Marino failed to file an opposition.   Carlos Marino then moved for reconsideration on April 17, 2007 [Dkt. No. 12] and for relief from the judgment on November 30, 2009 [Dkt. No. 16].   Judge Urbina denied both motions on August 5, 2010.   See Marino v. DEA, 729 F. Supp. 2d 237 (D.D.C. 2010) ("Marino I").   Judge Urbina reasoned that

---

[3] The OIP also determined that the requested records were exempt from disclosure "pursuant to 5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices."   [Dkt. No. 5-1, Ex. G].   However, the DEA has not pursued that exemption in this case.

granting Carlos Marino relief from the judgment would be futile because he lacked any meritorious counterargument to the DEA's Glomar response.  Id. at 243-245.

On appeal, the D.C. Circuit reversed.  Marino v. DEA, 685 F.3d 1076 (D.C. Cir. 2012) ("Marino II"). The Court of Appeals emphasized that the only issue under consideration was the propriety of the agency's Glomar response, which is "an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information."  Id. at 1078 n.1 (citation and internal quotation marks omitted).

The Court of Appeals held that Carlos Marino's identification of public records linking NADDIS number 3049901 to Lopez presented a plausible basis to overcome the DEA's Glomar response because "[u]nder FOIA's 'public domain' exception, an agency may not rely on an 'otherwise valid [FOIA] exemption to justify withholding information that is already in the 'public domain.'"  Id. at 1080 (citing Students Against Genocide v. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001)). The panel emphasized that, "[e]ven if later in litigation the DEA showed legitimate grounds to withhold every document in NADDIS file No. 3049901, Marino has raised a meritorious defense

that the DEA's justification for refusing even to confirm the file's existence has been undermined by prior public disclosure." Id. at 1082.

On remand and reassignment of the case to this Judge, the Court granted relief from the prior judgment, denied the DEA's Motion for Summary Judgment, directed the DEA to file an Answer to the Complaint, and set a schedule for limited discovery. [Dkt. No. 49].

The DEA's Answer, filed on March 25, 2013, continued to assert Glomar as its sole substantive defense. [Dkt. No. 53]. However, on May 7, 2013, the Court held a status conference at which the Government informed the Court for the first time that it was not certain whether it would continue to pursue this defense. The parties also informed the Court at this time that Carlos Marino had recently been released from prison due to terminal cancer. The Court then set deadlines for the Government to decide on its Glomar response and for summary judgment briefing.

Thereafter, the Government continued to equivocate on its Glomar response before finally deciding, on May 29, 2013, that it would "no longer assert the Glomar response in this case." [Dkt. No. 62]. The DEA now concedes that its assignment of NADDIS number 3049901 to Lopez is a matter of public record, but

-10-

has failed to ever explain why it took seven years and a successful appeal to the Court of Appeals for Marino to prevail on this issue. See Def.'s Mot. at 7.[4]

After withdrawing its Glomar response, the Government sought an extension of time to file its summary judgment motion, which the Court initially granted but later modified at Marino's request in light of his deteriorating health. The result was that the Government filed its Renewed Motion for Summary Judgment on May 31, 2013, just two days after it withdrew its Glomar response, but did not provide the Court with anything resembling a conventional Vaughn index. [Dkt. No. 65]. On June 14, 2013, Marino filed his Opposition. [Dkt. No. 66]. On June 24, 2013, the Government filed its Reply [Dkt. No. 68], and on June 26, 2013, Marino filed a Sur-reply with permission from the Court. [Dkt. No 70].

On July 16, 2013, after summary judgment briefing was complete but before the Court had ruled on the Motion, Carlos Marino passed away. See Statement Noting Death of Plaintiff Carlos Marino [Dkt. No. 72]. On December 5, 2013, the Court

---

[4]   Although the DEA acknowledges only one public document linking Lopez to his NADDIS number, there are at least three such documents on this Court's public docket. See Pl.'s Opp'n, Ex. A at 256, 261, 262 (DEA-6 Forms dated Aug. 18, 1997 and Sept. 10, 1997) [Dkt. No. 66-2]; Pl.'s Opp'n Ex. L at 4 (DEA-6 Form dated Aug. 16, 1997) [Dkt. No. 66-15].

granted Griselle Marino's Motion to substitute on his behalf. [Dkt. Nos. 89, 90]. On February 5, 2014, the Court held oral argument on the DEA's Motion. On February 10, 2014, the Government filed a Notice of Authority, citing an appellate brief Carlos Marino had filed in 1998 in his criminal case that the Government purportedly discussed at oral argument in this case. [Dkt. No. 93].

## II.  **LEGAL STANDARD UNDER FOIA**

The purpose of FOIA is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Morley v. C.I.A., 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fit within one or more of nine categories of exempt material." Oglesby v. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. § 552(a), (b)). Exemption 7(C), which is at issue in this case, permits an agency to withhold law enforcement records when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

FOIA's "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 5 (D.C. Cir. 2011) (citing Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002)). "If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions." Oglesby, 79 F.3d at 1176 (citing 5 U.S.C. § 552(b)). "At all times, courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed." ACLU, 655 F.3d at 5 (internal citations and punctuation marks omitted).

A district court reviews an agency's decision to withhold responsive documents de novo. 5 U.S.C. § 552(a)(4)(B). The agency bears the burden of demonstrating that it has conducted an adequate search, and that its decision to withhold any responsive documents is justified. Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).

"FOIA cases are typically and appropriately decided on motions for summary judgment." Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d

-13-

123, 130 (D.D.C. 2011) (quoting Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  The Court may grant summary judgment on the basis of information provided in agency affidavits or declarations, but only if such materials (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail"; (2) "demonstrate that the information withheld logically falls within the claimed exemption"; and (3) show that the agency's explanations for withholding documents "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

As in any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his [or her] favor, and eschew making credibility determinations or weighing the evidence." Montgomery v. Chao, 546 F.3d 703, 706 (D.C. Cir. 2008).  If the Court concludes that there are genuine issues of material fact as to the sufficiency of the agency's response, summary judgment must be denied.  See Fed. R. Civ. P. 56(a).

## III. ANALYSIS

The DEA advances two principal arguments as to why it is entitled to summary judgment.  First, it construes Marino's FOIA

request narrowly and purports to have fully responded to it by producing a single document.   Second, it maintains that, to the extent Marino's request seeks documents other than the single document produced, such documents are exempt from disclosure under FOIA Exemption 7(C).   Marino refutes both of these arguments and asks the Court to enter summary judgment in her favor pursuant to Fed. R. Civ. P. 56(f)(1).

### A.   The Scope of the Request

Determination of the scope of the request is the first issue to be decided.   Our Court of Appeals has emphasized that "[a]lthough a requester must 'reasonably describe' the records sought, 5 U.S.C. § 552(a)(3), an agency also has a duty to construe a FOIA request liberally." Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (citations omitted).

In addition, the DOJ's own internal guidance reiterates that "[e]ven if the request 'is not a model of clarity,' an agency should carefully consider the nature of each request and give a reasonable interpretation to its terms and overall content." United States Dep't of Justice, Guide to the Freedom of Information Act, Procedural Requirements, at 25 (2013), available at http://www.justice.gov/oip/foia-guide.html (last visited February 11, 2014).

-15-

Marino's request stated, in relevant part:

> Specifically, I request a copy of all documents indexed under No. 3049901 of [NADDIS]. I am only requesting information that is already public information or was required to be made public in public trials conducted on December 7-10, 1997, in the Northern District of Florida styled as United States v. Marino . . . and in June, 1998, in the Eastern District of New York styled as United Stated [sic] v. Pastor Parafan-Homen. . . . If any documents indexed under NADDIS No. 3049901 or portions thereof are withheld or redacted because of statutory exemptions, please forward to me the segregable portion of the document[.]

FOIA Request [Dkt. No. 5-1, Ex. A] (emphasis added).

The Government focuses on the second sentence of the quoted language and argues that it limits Marino's request to two categories of documents: (1) documents indexed to NADDIS number 3049901 that were "made public" at the trials of Carlos Marino and Parafan-Homen, and (2) documents indexed to NADDIS number 3049901 that were "required to be made public" at such trials, but were not. Def.'s Mot. at 9-12.

According to the Government, the second category is not a proper subject of a FOIA request because "it is a question disguised as a request for documents: to answer it, one would need to be totally familiar with the facts of the trials, the nature of the documents that DEA has concerning Lopez, and . . . the government's disclosure obligations[.]" Id. at 12. Therefore, the Government concludes that the request only

-16-

properly seeks documents actually introduced at the two trials because a "fundamental axiom of FOIA law is that agencies are not required to answer questions posed as FOIA requests."  Id. at 11-12 (citing Zemansky v. EPA, 767 F.2d 569, 574 (9th Cir. 1985); DiViaio v. Kelly, 571 F.2d 538, 542-43 (10th Cir. 1978); Amnesty Int'l v. CIA, No. 07-5435, 2008 WL 2519908, at *12-13 (S.D.N.Y. June 19, 2008)).

Marino rejects the DEA's narrow reading and argues that the request seeks "all documents indexed under [NADDIS] number 3049901," whether introduced at the trials or not.  Pl.'s Opp'n at 24-26 (emphasis added).  Marino also argues that, after seven years of litigation in which the DEA has never once questioned the meaning of his request, the DEA has forfeited any objection that it is ambiguous or improper.  Id. at 16-23.

For the following reasons, the Court concludes that Carlos Marino's request is "reasonably susceptible" to the interpretation urged by Marino, LaCedra v. Exec. Office for U.S. Att'ys, 317 F.3d 345, 348 (D.C. Cir. 2003), and therefore, it need not reach Marino's alternative contention that the Government has forfeited this argument.

As a preliminary matter, the first sentence of the request "[s]pecifically" asked for "all documents" indexed under NADDIS #3049901.  FOIA Request [Dkt. No. 5-1, Ex. A] (emphasis added).

Likewise, the third sentence of the request asked that if the DEA withheld "<u>any</u> documents indexed under NADDIS No. 3049901," it send Marino any segregable portion of such documents.   <u>Id.</u> (emphasis added).   This expansive language is fully consistent with Marino's interpretation and inconsistent with the narrow reading urged by the Government.   As our Court of Appeals has observed:

> The drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof. We think it improbable, however, that a person who wanted only the subset would draft a request that . . . first asks for the full set.

<u>LaCedra</u>, 317 F.3d at 348.

The broad language in the first sentence of Marino's request can be reconciled with the limiting language in the second because the two sentences appear to have different purposes.   Whereas the first defines the scope of the request, the second explains why (in Marino's view) such documents are not exempt.   In fact, the second sentence closely tracks the two theories Carlos Marino repeatedly presented to this Court as to why Exemption 7(C) does not apply to the documents in Lopez's file:   first, that the events underlying the requested records have already been publicly disclosed; and second, that the Government's obligation to disclose Lopez's false testimony at

-18-

his criminal trial established a public interest in the requested records sufficient to counterbalance Lopez's privacy interest in withholding them.[6]

This reading of Marino's request is also consistent with the structure of arguments presented by Marino during his administrative appeal, in which he again described his request broadly at the outset as one "for records indexed under NADDIS #3049901[.]" Letter from Marino to OIP dated Aug. 9, 2004 [Dkt. No. 5-1, Ex. E]. He then challenged the DEA's denial of his request by quoting from the DOJ's own FOIA Reference Guide for the proposition that:

> information about a living person can be released without that person's consent 'when no privacy interest would be invaded by disclosing the information, <u>when the information is already public or</u> <u>required to be made public or where there is such a</u> <u>strong public interest in the disclosure that it</u> <u>overrides the individuals' privacy interest</u>.'

<u>Id.</u> (emphasis added) (citing U.S. Dep't of Justice, Freedom of Information Act Reference Guide, at 4 (November 2003)). Marino explained that his original request specifically set forth these bases for release of the requested documents. <u>Id.</u>

Finally, the Government itself appears to have read the second sentence of Marino's request primarily as an effort to

---

[6] The second theory is explained in more detail <u>infra</u> at III.B.2.

overcome Exemption 7(C) rather than a genuine limitation on the scope of the request. For example, in its original Motion for Summary Judgment, the DEA described the second sentence as an attempt "to end-run the 7(C) exemption." Def.'s [Original] Mot. for Summary Judgment at 9 [Dkt. No. 5]. Later, in its appellate brief to the D.C. Circuit, the DEA argued that even if it did publicly disclose an individual's NADDIS number, that fact "would still not require DEA to reveal all of the information in such an individual's files[,]" indicating that the agency, in fact, understood Marino to be seeking all such files. Pl.'s Opp'n Ex. I (DEA's App. Br. to D.C. Cir.) at 11-12 (emphasis added) [Dkt. No. 66-12].

For all the foregoing reasons, the second sentence of Marino's request is reasonably read as neither a limitation on the scope of the request nor a request for the Government to answer a question, but as an explanation of why, in Marino's view, the requested documents are not exempt from disclosure. By contrast, the first sentence does define the scope of the request, and clearly and specifically seeks all documents indexed to NADDIS number 3049901. Accordingly, the Court shall

construe Marino's request as one for all documents indexed to
NADDIS number 3049901.[7]

### B.   The Government Is Not Entitled to Summary Judgment Under Exemption 7(C)

The Government also argues that even if Marino's request is
construed broadly, the agency is still entitled to summary
judgment because Exemption 7(C) justifies its categorical
withholding of the requested documents.   To prevail on this
argument, the DEA must make two independent showings.   First, it
must persuade the Court that it has made a "good faith effort to
conduct a search for the requested records, using methods which
can be reasonably expected to produce the information
requested."   Oglesby, 920 F.2d at 68.   Second, it must show that
the withheld documents fall "within a FOIA statutory exemption,"
here, Exemption 7(C).   Leadership Conf. on Civil Rights v.
Gonzalez, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

---

[7] The DEA also argues that a "requester who fails to submit a
proper FOIA request has not exhausted his administrative
remedies . . . and an agency is under no obligation to
respond[.]"   Reply at 7 (citing Lewis v. Dep't of Justice, 733
F. Supp. 2d 97, 107 (D.D.C. 2010)).   However, the DEA did
respond to Marino's request, and never once suggested it did not
understand the meaning of the request.   Nor has it explained how
its seven-year long Glomar stance would have differed under the
interpretation Marino advances.   Therefore, the Court is
satisfied that Marino properly exhausted his administrative
remedies.

### 1. The DEA Has Not Established that It Conducted an Adequate Search

"To merit summary judgment on the adequacy of a search, an agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Students Against Genocide, 257 F.3d at 838 (citing Nation Magazine, 71 F.3d at 890). "In general, the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" Hodge v. FBI, 703 F.3d 575, 579 (D.C. Cir. 2013) (citation omitted). "The agency must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Students Against Genocide, 257 F.3d at 838.

The DEA has submitted declarations from Assistant United States Attorney Fred E. Haynes ("Haynes"), the attorney principally responsible for defending this case, and its FOIA Chief, Katherine L. Myrick ("Myrick"), describing the extent of the agency's search.

Haynes attests to obtaining the DOJ's retired case files in the criminal prosecutions of Marino and Parafan-Homen and reviewing them for all "documents of significance" that are "open to the public" and relate to Lopez or NADDIS number

-22-

3049901.   See Haynes Decl. ¶ 10 [Dkt. No. 65-1]; Response to Pl.'s First Set of Reqs. for Prod. of Docs. Nos. 1, 3, 4.   This search was undertaken during the discovery process in this case, which was focused solely on publicly-disclosed documents linking Lopez with NADDIS number 3049901. It did not extend to all DEA records indexed to NADDIS number 3049901 and, consequently, it was not "reasonably calculated to uncover all" responsive documents.   Students Against Genocide, 257 F.3d at 838.[8]

Myrick's declaration also falls short.   She informs us that the DEA's law enforcement records are "reasonably likely to be found in DEA's Investigative Reporting and Filing System (IRFS)."   First Supp. Myrick Decl. ¶ 6.   However, she did not search IRFS for any records because, as she explained, IRFS "is not indexed, as plaintiff's FOIA request sought, by a court's case name, by a court's case file number, by information that is public information, or by information that was required to be made public in public trials."   Id. ¶ 7.   This explanation is totally unconvincing in light of the Court's ruling that Marino seeks all documents indexed to NADDIS number 3049901, and not

---

[8]  At oral argument, counsel for the Government stated for the first time that he had searched all DEA records for documents indexed to NADDIS number 3049901, but he offered virtually no detail as to the methods he employed or the results of his search.  See Tr. at 7:16.

simply those that were made public or required to be made public at the two trials. Accordingly, the DEA shall be directed to search IRFS for all such records.

### 2. Marino Has Demonstrated a Significant Public Interest in the Documents Under Exemption 7(C)

The DEA also contends that it should not be required to identify responsive records because the records Marino seeks are presumptively privileged under Exemption 7(C).

As already noted, Exemption 7(C) protects law enforcement records for which disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has held that once the Government has shown that the privacy concerns addressed by Exemption 7(C) are present, the burden shifts to the requester to demonstrate that the "public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004). To satisfy this burden where, as here, "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, . . . the requester must produce evidence that would warrant a belief by a

reasonable person that the alleged Government impropriety might have occurred." Id. at 174.

If the requestor meets this burden, the court must, in the final analysis, "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect'" in order to determine whether the Exemption applies. ACLU, 655 F.3d at 6 (citing U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989)).

The DEA contends that it is entitled to summary judgment without any balancing analysis because Marino has not pointed to facts that would warrant a reasonable belief that Government misconduct "might have occurred."[9]  The Court disagrees.  Marino has presented evidence indicating that the Government "might" have been negligent in failing to know that its key witness was lying to the jury and seriously understating his involvement in the Parafan-Homen conspiracy.

---

[9]  At oral argument, the Government misstated the standard governing Marino's evidentiary burden.  While the Government agreed that Favish is the controlling case, it contended Marino was required to present "compelling evidence" of Government misconduct to trigger a balancing under Exemption 7(C).  Tr. at 20:3-5.  The "compelling evidence" standard does not appear anywhere in the Favish decision and appears only in D.C. Circuit case law significantly predating Favish.

First, between August and November 1997, Lopez gave a series of interviews to DEA agents in which he told them, inter alia, that he had met personally with Parafan-Homen and other high level participants in Columbia on more than one occasion. See DEA Notes dated October 27, 1997 [Dkt. No. 66-2 at 178-185]. The Government also knew, through its years-long investigation of the Parafan-Homen organization, that several other co-conspirators had attempted to meet with Parafan-Homen in Columbia but were never allowed to physically see him.   Pl.'s Opp'n Ex. D (Gov't's App. Br. in United States v. Parafan-Homen) at 12 [Dkt. No. 66-7].[10]   The fact that Lopez was able to meet face-to-face with the conspiracy's leader on more than one occasion while others were not reasonably suggests Lopez was part of Parafan-Homen's inner circle and should have led Government officials to suspect his involvement in the conspiracy was more extensive than he depicted at Marino's trial.

Second, despite its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Government did not disclose

---

[10] By the time Marino and Lopez were arrested in August 1997, the DEA had been investigating the Parafan-Homen conspiracy for at least four years and several of its key members had already been arrested and extradited to the United States, including Parafan-Homen himself. See Pl.'s Opp'n Ex. D at 8 (Gov't's App. Br. in United States v. Parafan-Homen) [Dkt. No. 66-7].

the notes from its interviews with Lopez to Carlos Marino until he filed his § 2255 Motion. See Pl.'s Opp'n Ex. E (Gov't's Resp. to Marino's § 2255 Pet.) at 7-8 [Dkt. No. 66-8 at ECF pp. 8-9]. Instead, the prosecutor inaccurately stated at his trial that the DEA agents had not taken notes during their interviews with Lopez. See Pl.'s Opp'n Ex. A (Joint Appendix) at 114-15, 223 [Dkt. No. 66-2].

Third, Marino has submitted a list of NADDIS numbers associated with the Parafan-Homen conspiracy indicating that Carlos Marino was the last of fifty-eight investigative subjects to enter the DEA's database. See Pl.'s Opp'n, Ex. A (List of Persons Associated with the Company in Numerical Sequence in Which They Were Entered into the NADDIS Databanks) [Dkt. No. 66-4 at 124]. In fact, it appears he did not enter the DEA's database until Lopez's arrest in August 1997, indicating the Government was not aware of his existence until that point. When he did finally enter the database, his NADDIS number was 4210827. By contrast, Lopez's NADDIS number, 3049901, which is more than one million numbers lower than Marino's and the twenty-second entry on the list, suggests he was on the DEA's radar long before his arrest. These circumstances might have alerted prosecutors that Lopez's role was more extensive than he

represented, and prompted them to cross-check his statements against the accounts of other cooperators.[11]

Thus, although the Government had been investigating the Parafan-Homen organization for years, and although DEA agents were in possession of information suggesting Lopez's involvement was more extensive than he led them to believe, the Government produced only a single Form DEA-6 to Marino prior to trial, did not alert Marino to many of the inconsistencies between Lopez's trial testimony and his debriefing statements, and relied heavily on Lopez's testimony to argue that Marino should receive a sentencing enhancement based on his purportedly managerial role in the enterprise. See Pl.'s Opp'n, Ex. B (sentencing transcript) at 6-10 [Dkt. No. 66-5 at ECF nos. 24-28]. These circumstances satisfy Marino's evidentiary burden to show that the Government "might" have fallen below an acceptable standard of care to ensure the integrity of the proceedings.

Finally, the Court rejects the Government's suggestion that Lopez's perjury was unimportant because it "was totally unrelated to the evidence against Mr. Marino." Tr. at 7:4-5. Lopez's testimony was absolutely critical to any finding that

---

[11] At least two other co-conspirators, William Quintero and Andres Meneses, were cooperating with the Government and had been debriefed multiple times before Marino's trial in December 1997. Id. at 9, 13. There is no indication that Lopez's account was corroborated by their accounts.

Carlos Marino worked for the Parafan-Homen organization and his believability was a central component of the Government's case. Even if his falsehoods related more to his own criminal activities than Marino's, his readiness to lie under oath seriously impacted his credibility. The Government's failure to investigate and disclose evidence indicating that he was lying potentially deprived the jury of a full opportunity to assess his trustworthiness as a witness. See Tr. at 6:12-13.

Moreover, credibility aside, unlike in Marino's § 2255 proceeding, the focus in this case is not solely whether the Government's conduct prejudiced Marino, but whether the public would want to know about it. It serves the public interest in fair and carefully investigated criminal trials to know that the Government built its case on an unreliable witness and ignored red flags that he was underplaying his role in the conspiracy – and potentially exaggerating Marino's – in order to win leniency from the Court and the Government. See ACLU, 655 F.3d at 14 ("matters of substantive law enforcement . . . are properly the subject of public concern") (citation omitted).

In sum, even if the Government did not definitively know that Lopez was perjuring himself at Marino's trial, its failure to investigate and learn all of the facts about its key witness, and to disclose all exculpatory evidence to Carlos Marino,

-29-

reasonably suggest that it "might" have acted negligently or otherwise improperly during Marino's prosecution.    This low threshold of proof is all that is required, at this juncture, to survive summary judgment. <u>Favish</u>, 541 U.S. at 174.[12]

### 3. The DEA Does Not Identify Any Basis for Categorical Withholding

Third and finally, the DEA argues that even if Marino has made an evidentiary showing sufficient to trigger Exemption 7(C)'s balancing test under other circumstances, no balancing is required because the documents in Lopez' file are categorically exempt.

Our Circuit has acknowledged that FOIA does not necessarily require a court to "evaluate the revelatory characteristics of every individual document in each case[.]" <u>Lopez v. Dep't of Justice</u>, 393 F.3d 1345, 1349 (D.C. Cir. 2005).    Instead, "rules

---

[12] The Government cites <u>Martin v. Dep't of Justice</u>, 488 F.3d 446 (D.C. Cir. 2007) for the proposition that Marino is collaterally estopped from arguing that the Government committed misconduct in his criminal case.    In <u>Martin</u>, our Court of Appeals held that a FOIA requester who, in an earlier § 2255 proceeding, unsuccessfully argued that the Government committed misconduct at his trial, was collaterally estopped from making the same argument in a FOIA case.    However, in <u>Martin</u>, the Magistrate Judge who denied relief under § 2255 first reviewed, <u>in camera</u>, the same documents the requester later sought in his FOIA case. In this case, nobody (other than the Government) has reviewed the requested documents to determine whether they reveal Government misconduct.    Therefore, unlike in <u>Martin</u>, the factual matters presented by this FOIA case are different from those underlying Carlos Marino's § 2255 proceeding.

exempting certain categories of records from disclosure," are appropriate "when the range of circumstances included in [the] category 'characteristically supports an inference' that the statutory requirements for exemption are satisfied" so long as a request falls within the category. Nation Magazine, 71 F.3d at 893 (citing United States v. Landano, 508 U.S. 165, 176-80 (1993)). At the same time, the Court of Appeals has cautioned that, "[b]ecause the myriad considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored." Stern v. FBI, 737 F.2d 84, 91 (D.C. Cir. 1984) (citation omitted).

The DEA has not come close to showing that categorical withholding is appropriate in this case. As a preliminary matter, it has not, as discussed supra, demonstrated that it conducted an adequate search for responsive records. In the absence of such a search, the Court is certainly not about to take it on faith that all responsive records, in their entirety, implicate Lopez's privacy interests, especially given that Lopez's identification with a DEA investigation is now a matter of public record. See Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1282 n.4 (D.C. Cir. 1992) ("If . . . the only basis for

nondisclosure is an individual's interest in remaining anonymous, and an excerpt revealing his identity is disclosed, there may no longer be any justification for continuing to withhold [the requested record].").

Even if the DEA had conducted an adequate search, the DEA's categorical withholding is inappropriate because circumstances exist that do not "characteristically support" the inference that Exemption 7(C)'s statutory requirements are satisfied.

First, to the extent the records detail Lopez's own criminal activities, any privacy interest in such information is likely to have been greatly diminished by his public testimony on the same issues and voluntary participation in at least four public criminal proceedings.[13] See, e.g., Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) (privacy interest of individual "undoubtedly" diminished where "the public already knows who he is, what he was accused of, and that he received a relatively mild sanction"). Naturally, it is difficult for the

---

[13] In addition to testifying against Carlos Marino and Parafan-Homen, Lopez testified at the separate trials of Gustavo Pedraza and Conrado Luis Lopez in the Northern District of Florida in 1999. See Pl.'s Opp'n Ex. E (Gov't's Resp. to Marino's § 2255 Pet.) at 9 [Dkt. No. 66-8 at ECF p. 10]. Lopez was also publicly charged with, and pleaded guilty to, one count of conspiracy, for which he was sentenced to 42 months of imprisonment. See United States v. Lopez, No. 97-cr-084-RV (N.D. Fla. June 26, 1998) [Dkt. No. 124-2].

Court to assess the full extent of Lopez's privacy interest without knowing anything about the type of records at issue.

Second, as discussed above, Marino has adduced evidence that DEA agents and prosecuting attorneys acted either negligently in failing to cross-check Lopez's story against the Government's broader investigation of Parafan-Homen's organization, or improperly by presenting his testimony despite knowing it was false. Marino has also presented evidence that the Government acted improperly by suppressing or failing to learn of discoverable and potentially exculpatory material. The American public has a strong public interest in knowing if a defendant serving a long sentence (in this case, 30 years) for the serious crime of conspiracy to import cocaine has been wrongfully convicted on the basis of perjured testimony that the Government might well have been able prevent through its own investigation, compliance with its <u>Brady</u> obligations, or both.

Third, while it is both reasonable and consistent with this Circuit's case law to assume that some portion of the responsive records may implicate the privacy interests of Lopez and others who may be mentioned in them, <u>see, e.g.</u>, <u>Davis</u>, 968 F.2d at 1281 (persons involved in law enforcement investigations "have a substantial interest in seeing that their participation remains secret"), this does not supply a basis to withhold the

-33-

records in their entirety. The DEA puts forth no reason why redactions or selective withholding will not suffice to protect any existing privacy interests. See Nation Magazine, 71 F.3d at 896 (holding that an agency is not permitted "to exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen") (emphasis in original).[14]

In sum, given the centrality of Lopez's testimony at Marino's trial and sentencing, Lopez's subsequent admission to perjuring himself on various occasions, and the existence of evidence indicating that the Government was, at a minimum, negligent in failing to be aware that Lopez was not telling the truth, Marino has plausibly demonstrated that Exemption 7(C) "might" not apply to at least some of the responsive documents. For all of these reasons, the Government's assertion of a categorical exemption is rejected, and the Government's Renewed Motion for Summary Judgment shall be **denied.**

However, without knowing more about the records at issue, and the interests they implicate, the Court cannot make a determination that the public interest in disclosure outweighs

---

[14] At oral argument, the Government conceded that redactions would likely suffice to protect the privacy interests of any individuals other than Lopez who might be mentioned in the documents. Tr. at 8:4-7.

the privacy interests at stake.  Consequently, Marino's request for summary judgment in her favor pursuant to Fed. R. Civ. P. 56(f) shall also be **denied**.

### C.   The Government Must File a Vaughn Index

After seven years of litigation, the Government still has not yet submitted a Vaughn index.  Instead, it continues to assert that it need not do so because information "regarding the existence or non-existence of law enforcement investigative records concerning a third party is reasonably likely to infringe on the third party's privacy."  First Supp. Myrick Decl. ¶ 12.

The Government seems to have forgotten that after years of hemming and hawing, it has now withdrawn its Glomar response. Having done so, the DEA is now "required to confirm that responsive records exist, then either release them or establish that they are exempt from disclosure."  Marino II, 685 F.3d at 1082 (emphasis added) (citing Wolf v. CIA, 473 F.3d 370, 380 (D.C. Cir. 2007)); see also ACLU v. CIA, 710 F.3d 422, 432 (D.C. Cir. 2013) ("With the failure of [a] . . . Glomar response, the case must . . . proceed to the filing of a Vaughn index or other description of the kind of documents the Agency possesses, followed by litigation regarding whether the exemptions apply to

those documents.") (citing Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)).

After the DEA searches its records in compliance with this Memorandum Opinion and Order, it shall prepare a Vaughn index, or other reasonably detailed description of the responsive records and the reasons for withholding them that will permit the Court to assess any exemptions claimed.  The DEA will then be "entitled to make individualized arguments as to why particular documents [or portions thereof] might be appropriately withheld," and Marino will be entitled to rebut those arguments.  Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice, No. 11-754 (GK), 2013 WL 2549680, at *10 (D.D.C. June 12, 2013).

## IV.  CONCLUSION

For the foregoing reasons, the DEA's Renewed Motion for Summary Judgment will be **denied,** and Marino's request for summary judgment in her favor under Rule 56(f) shall also be **denied.**  An Order shall accompany this Memorandum Opinion.

February 19, 2014

Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF