UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRISELLE MARINO,

    *Plaintiff*,

v.

DRUG ENFORCEMENT
ADMINISTRATION,

    *Defendant*.

Civil Action No. 06-1255 (TJK)

## MEMORANDUM OPINION

In this case brought under the Freedom of Information Act, Plaintiff Griselle Marino seeks documents related to a witness who testified against her deceased spouse at his trial, at which he was convicted on federal drug charges. The parties have cross-moved for summary judgment. For the reasons explained below, Marino's motion for summary judgment will be denied, and Defendant's cross-motion will be granted.

**I.   Background**

This suit concerns a FOIA request submitted in 2004 by Carlos Marino, which sought records connected to an individual, Everth Lopez, who testified at his criminal trial.[1] ECF No. 95 at 2. Carlos Marino was ultimately convicted. *Id.* In his FOIA request, he asked the Drug Enforcement Administration ("DEA") for "a copy of all documents indexed under No. 3049901 of the Narcotics and Dangerous Drug Information System ("NADDIS"). I am only requesting information that is already public information or was required to be made public in public trials . . . ." ECF No. 136 ¶ 1. NADDIS numbers are unique numbers assigned to individuals in the

---

[1] Following Carlos Marino's death, Griselle Marino was substituted as Plaintiff in December 2013. ECF No. 89.

DEA's database for various reasons, *e.g.*, because the person is a subject of an investigation, defendant, witness, confidential source, victim, or family member. ECF No. 136-2 ("Myrick Decl.") ¶ 9. Carlos Marino suspected that No. 3049901 was associated with Lopez. ECF No. 95 at 6.

In response to the request, the DEA issued what is known as a *Glomar* response, stating it could neither confirm nor deny the existence of the requested records because NADDIS No. 3049901 was linked to a third party. Thus, according to the DEA, there would be an unwarranted invasion of privacy unless it was provided proof of the third party's death or a notarized privacy waiver. ECF No. 136 ¶ 3; Myrick Decl. ¶ 15. As a result, the DEA did not search for any documents. Myrick Decl. ¶ 18. Carlos Marino filed this case in 2006, and the DEA maintained its *Glomar* response until 2013. ECF No. 136 ¶ 4; Myrick Decl. ¶ 15.

Ultimately the DEA withdrew that response and conducted a search, but one limited to documents that had been made public. ECF No. 95 at 10, 23. The DEA argued that its search was reasonable based on the language of the request, and that even if the request were interpreted more broadly, all other documents could be "categorically" withheld under Exemption 7(C), which protects against "unwarranted invasion of personal privacy." ECF No. 65 at 16. But Judge Kessler, to whom this case was previously assigned, rejected the DEA's approach and ordered it to search for all documents indexed to NADDIS No. 3049901, no matter whether they were made public or required to be made public at the related trials. ECF No. 95 at 23–24. Although the DEA asserted it had already searched all its records for documents indexed to NADDIS No. 3049901, Judge Kessler found that the DEA "offered virtually no detail as to the methods . . . employed or the results of [the] search." *Id.* at 23 n.8.

So the DEA went back and conducted a more thorough search for NADDIS No. 3049901, which returned three case files. Myrick Decl. ¶ 19. In those files, the DEA searched page-by-page for documents "indexed to NADDIS number 3049901," *i.e.*, pages "that had a notation indicating that information on the page had been entered into NADDIS and linked to number 3049901." *Id.* This search turned up 128 responsive pages. *Id.* Of those, in 2015, the DEA released 1 page in full, 35 pages with redactions, and withheld 92 pages in full. *Id.* ¶ 20. The DEA moved for summary judgment, while Marino moved for *in camera* review. *See* ECF Nos. 103, 105. Judge Kessler denied the DEA's motion for summary judgment and granted Marino's motion to review the 128 pages *in camera*. ECF No. 110. Ultimately, Judge Kessler upheld those redactions and withholdings. *See* Minute Order of June 11, 2015.

Judge Kessler then ordered the parties to submit statements of remaining issues. Minute Order of July 28, 2015. In light of those filings and citing confusion in determining the posture of the case, Judge Kessler instructed the parties to submit another round of motions for summary judgment. ECF No. 127. In the meantime, the case was re-assigned to this Court. Griselle Marino filed her current motion for summary judgment first, ECF No. 130, in which she claimed that the DEA's search was inadequate, the DEA's assertion of exemptions other than 7(C) was untimely, and the DEA had failed to produce all reasonably segregable portions of the relevant records. The DEA then filed its current cross-motion, ECF No. 136—but not before it re-reviewed the three case files. This time, the DEA looked for any pages referring to Lopez regardless of whether they were indexed to NADDIS No. 3049901. Myrick Decl. ¶ 23. The DEA identified 406 additional pages through this search. *Id.* ¶ 24. In 2018, it released 62 pages in full, 260 pages with redactions, withheld 12 pages in full, and referred 73 pages to other agencies or components of the Department of Justice ("DOJ"), only one of which is relevant to

3

the instant motions, an 11-page document withheld by DOJ's Organized Crime Drug Enforcement Task Forces ("OCDETF"). *Id.* ¶¶ 24, 28.

Marino then filed her combined opposition and reply, ECF No. 138, in which she maintained her challenges to the adequacy of the search and the timeliness of any exemption other than exemption 7(C), clarified that she challenged the segregability of material on only 45 specific pages (34 pages redacted or withheld by the DEA in 2018, and the 11-page document withheld by OCDETF in 2018), and asserted that while the DEA had withheld two pages in full under exemption 7(C), it had only explained its basis for applying this exemption to one page in its affidavit.[2] ECF No. 138-1 at 2; ECF No. 138-3 at 2. Marino requested *in camera* review of those 45 pages on both the timeliness issue and for segregability. ECF No. 138-1 at 2.

In response, the DEA re-processed some of the documents one more time and resolved an indexing backlog issue. ECF No. 141-1 ("Miller Decl.") ¶¶ 10–15. In all, in 2018, the DEA re-processed the 34 pages identified by Marino to disclose further information and minimize redactions. *Id.* ¶¶ 17(a)–(y). The DEA also realized that it had miscounted how many of those 34 pages it had withheld in full—the correct total number was ten, rather than 11. *Id.* ¶ 16. In connection with the reprocessing, the DEA ultimately released five of those ten pages with redactions, and so it continues to withhold in full only five. *Id.* Because of the resolution of the backlog issue and re-processing, the Court permitted Marino to file a sur-reply addressing these issues. Minute Order of Feb. 5, 2021. The Court also ordered the DEA to produce the 45

---

[2] This dispute is no longer relevant to resolving the instant motions. The DEA's count of two pages withheld in full under exemption 7(C) turned out to be correct, but the DEA released in part those two pages as part of subsequent re-processing described above, ECF No. 141 at 11 n.3, and now explains the redactions on both pages, Miller Decl. ¶¶ 17(g), (w). Marino does not challenge those explanations, and as explained below, Marino dropped her timeliness and segregability challenges to all documents produced in 2018 except those pages that were withheld in full.

documents identified by Marino for *in camera* review. *Id.* Marino filed a sur-reply and clarified that of the 34 reprocessed pages, she now "limits [her] challenge . . . to the withholding in full of five of these pages." ECF No. 149 at 1. She does not, however, appear to have made any concession as to the 11-page OCDETF document.

So after all that, the disputes that remain for resolution are the following: (1) the adequacy of the DEA's search, (2) its invocation of exemptions other than 7(C) as untimely as to the 92 pages withheld in 2015, the five pages the DEA withheld in full in 2018, and the 11-page OCDETF document withheld in full in 2018; and (3) the segregability of information in the five pages the DEA withheld in full in 2018 and the 11-page OCDETF document withheld in full in 2018.

## II.     Legal Standard

"Congress enacted the FOIA in order to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)) (internal quotation marks omitted). "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.* ("*EPIC*"), 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed.

R. Civ. P. 56(a)). "In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *MacLeod v. Dep't of Homeland Sec.*, No. 15-CV-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing 5 U.S.C. § 552(a)(4)(B)); *see also Cable News Network, Inc. v. Fed. Bureau of Investigation*, 271 F. Supp. 3d 108, 111 (D.D.C. 2017) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden on the agency to sustain its action . . . ." (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)) (internal quotation marks omitted).

### III. Analysis

#### A. Adequacy of the DEA's Search

"To prevail on summary judgment [in a FOIA case], an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Reporters Comm. for Freedom of Press* ("*RCFP*") *v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides 'no information about the search strategies of the agency components charged with responding to a FOIA request'" and "'no indication of what each component's search specifically yielded.'" *Evans v. Fed. Bureau of Prisons*, No. 16-cv-

2274 (BAH), 2018 WL 707427, at *2 (D.D.C. Feb. 5, 2018) (quoting *RCFP*, 877 F.3d at 403) (cleaned up). "At a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)).

The DEA has carried its burden. After Judge Kessler construed the FOIA request at issue as seeking "all documents indexed to NADDIS number 3049901," ECF No. 95 at 20–21, the DEA searched its Investigative Reporting and Filing System (IRFS) for NADDIS No. 3049901, Myrick Decl. ¶ 19. A search of IRFS using a NADDIS number is a worldwide search for DEA records, including records maintained at field offices. *Id.* ¶ 12. The DEA's search for NADDIS No. 3049901 identified three case files. *Id.* ¶ 19. The DEA searched those files for pages "indexed to NADDIS number 3049901," *i.e.*, pages with a notation showing that the information on the page had been entered into NADDIS and linked to No. 3049901, or a notation reflecting that information would be so entered and linked. *Id.* It identified 128 responsive pages. *Id.* As already mentioned, the DEA later re-processed these files to look for any pages referring to Lopez regardless of whether they were indexed to NADDIS No. 3049901. *Id.* ¶ 23. The DEA identified 406 pages through that search. *Id.* ¶ 24.

Marino contends that the Court should find the DEA's search inadequate and order it to search IRFS for Lopez's name and known aliases because "the only way to get an adequate search is to direct the DEA to search for any documents in its investigative files that reference Mr. Lopez." ECF No. 130-1 at 9. By searching for NADDIS No. 3049901, the DEA construed the request too narrowly, according to Marino, and the search was therefore not reasonably calculated to capture all relevant documents. But the request's plain language sets the search parameters as documents indexed to that number. ECF No. 136 ¶ 1. Indeed, the DEA likely

went above and beyond what the request called for by searching the three case files for all documents referring to Lopez, even if they were not indexed to NADDIS No. 3049901.

In addition, that Marino suspects further documents must exist for various reasons, ECF No. 138-1 at 3–4, is immaterial, *see, e.g.*, *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (presumption of good faith accorded agency affidavits "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents"); *Hedrick v. Fed. Bureau of Investigation*, 216 F. Supp. 3d 84, 94–95 (D.D.C. 2016) (plaintiff cannot challenge adequacy of search based on speculation that agency is hiding or destroyed records). She also points to evidence of bad faith at Carlos Marino's trial and the considerable delays in this case as reasons the Court should order a new, broader search. ECF No. 130-1 at 15–18. Although these issues are concerning, the DEA has shown on this go-round with detailed affidavits why its search was sufficient, and as already explained, the Court finds the search methodology reasonable and faithful to the request's scope.[3]

### B.     Timeliness of Exemptions

"In addition to demonstrating the adequacy of the search, the agency must 'demonstrate that the records have not been improperly withheld.'" *Evans*, 2018 WL 707427, at *3 (quoting *Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir.

---

[3] Marino also previously argued that an indexing backlog issue provided a basis for ordering a new, broader search. But Marino has since withdrawn that argument. ECF No. 149 at 1 (characterizing backlog issues as "moot" because "[t]he DEA, by re-doing its search after all files had been entered into NADDIS, resolved the backlog issue Ms. Marino had raised").

2017)). "The burden is on the agency to justify withholding the requested documents, and the FOIA directs district courts to determine de novo whether non-disclosure was permissible." *EPIC*, 777 F.3d at 522. "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). The agency cannot rely on "conclusory and generalized allegations of exemptions." *Morley*, 508 F.3d at 1114 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)).

Marino does not challenge that the DEA has met the invoked exemptions' requirements; rather she argues that the assertion of any exemption other than 7(C) as to certain documents is untimely under *Maydak v. Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000) because that is the only exemption the DEA raised at the beginning of this litigation.[4] ECF No. 138-1 at 15. In *Maydak*, the D.C. Circuit held that "as a general rule," the government "must assert all exemptions at the same time, in the original district court proceedings." 218 F.3d at 764. Essentially, *Maydak* prohibits the government from "play[ing] cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then

---

[4] In connection with this argument, Marino requested *in camera* "*Maydak* review" of certain documents so that the Court could "reject[] . . . the attempt to raise new exemptions." ECF No. 138-1 at 15. Although the Court ordered the DEA to produce certain documents for *in camera* review of segregability, the Court finds that *in camera* review is unnecessary to resolve any *Maydak* issue. *Maydak* is mainly a legal question about the timeliness of the DEA's assertion of certain exemptions, and Marino has identified no relevant factual issues that the Court's review of the documents *in camera* would illuminate. No. 138-1 at 15.

9

springing it on surprised opponents and the judge." *August v. Fed. Bureau of Investigation*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *Senate of the Commonwealth of Puerto Rico ("Senate of Puerto Rico") v. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987)). But it did not establish a "rigid 'press it at the threshold, or lose it for all times' approach to agenc[ies'] FOIA exemption claims." *Id.* (quoting *Senate of Puerto Rico*, 823 F.2d at 581). In that vein, even where the *Maydak* rule would otherwise apply, this Circuit has recognized two exceptions: (1) "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim"; and (2) "a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded." *Maydak*, 218 F.3d at 767.

Marino invokes this doctrine as to the 92 pages withheld in 2015, the five pages the DEA withheld in full in 2018, and the 11-page OCDETF document withheld in full in 2018. The Court finds that the DEA has not run afoul of *Maydak* as to either the 2015 or 2018 production. First, Judge Kessler already decided that the DEA could assert these exemptions as to the 2015 set, and the Court declines to reconsider that decision. In 2015, Judge Kessler upheld the DEA's withholdings under exemptions 7(C), 7(D), 7(E), and 7(F) after reviewing the documents *in camera*. Marino argues that the application of *Maydak* to these withholdings remains an open question because Judge Kessler only issued a minute order approving the withholdings and did not specifically address *Maydak*. ECF No. 138-1 at 15. But the *Maydak* issue was before Judge Kessler when she reviewed the withholdings because Marino raised it in her motion for *in camera* review. ECF No. 105 at 5–6. Her review of the merits of the withholdings on that

record therefore implicitly acknowledged the exemptions as timely raised, and that conclusion is the law of the case. *See Loma Linda Univ. Kidney Ctr. v. Burwell*, 185 F. Supp. 3d 196, 199 (D.D.C. 2016) ("[T]he law-of-the-case doctrine [provides that] the *same* issue presented a second time in the *same* case in the *same court* should lead to the *same result*." (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996))); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987) ("The doctrine encompasses a court's explicit decisions, as well as those issues decided by necessary implication."). And there has been no "intervening change in the law" or demonstration that "the previous decision was 'clearly erroneous and would work a manifest injustice'" to justify revisiting this issue. *See Loma Linda*, 185 F. Supp. 3d at 200 (quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999)).

Second, as to the five withheld pages from the 2018 production and the OCDETF document withheld then as well, *Maydak* simply does not apply. The *Maydak* cases concern instances in which the government tries to raise additional exemptions late in litigation as to the *same documents* over which it previously asserted different ones. Marino has not suggested that is what has happened here, and she cites no case in which *Maydak* was applied to bar invocation of new exemptions over newly identified documents. In *Maydak*, the plaintiff sought his criminal case file from a U.S. Attorney's Office. 218 F.3d at 762. At first, DOJ asserted only exemption 7(A), which protects documents when their release "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), because the plaintiff was litigating a series of direct and collateral challenges to his conviction. *Id.* The district court granted summary judgment for DOJ, and the plaintiff appealed. *Id.* at 763. On appeal, once most of the plaintiff's conviction challenges concluded, DOJ moved to remand, stating that 7(A) no longer applied and seeking to assert new exemptions over the same documents. *Id.* at

11

764. The court denied the motion for remand and ordered all requested documents released to the plaintiff because DOJ had not timely raised the exemptions before the district court and did not qualify for either of the two *Maydak* exceptions. *Id.* at 769.

Here, in contrast, Marino does not suggest that the DEA is seeking to assert additional exemptions over the same documents as to which it once asserted different exemptions. Rather, the DEA asserted Exemption 7(E) the first time it addressed the five pages at issue, in its now-pending motion for summary judgment. Myrick Decl. ¶¶ 37–39. The same goes for OCDETF: the first time it addressed the 11-page document at issue, it asserted exemptions 5, 6, 7(C), and 7(E). ECF No. 136 at 21. And obviously, the DEA has no obligation to anticipate documents that may be later identified as FOIA litigation runs its course and somehow preemptively raise exemptions. Finally, that the DEA may have previously asserted 7(E) in conjunction with 7(C) and 7(F) over these pages, but now asserts only 7(E), *see* ECF No. 149 at 2, does not violate *Maydak* either, because the DEA has added no new exemptions.

    **C.**    **Segregability**

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt," 5 U.S.C. § 552(b), "unless the exempt portions are 'inextricably intertwined with exempt portions,'" *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). "The agency is 'entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material,' but that does not excuse the agency from carrying its evidentiary burden to fully explain its decisions on segregability," *100Reporters LLC v. Dep't of Justice*, 248 F. Supp. 3d 115, 165 (D.D.C. 2017) (quoting *Hodge v. Fed. Bureau of Investigation*, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original). Indeed, the agency "must . . . provide

descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions." *Am. Immigration Council v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 248 (D.D.C. 2013).

The DEA has met its burden. As it explained: "All responsive information was examined to determine whether any reasonably segregable information could be released," and information was withheld only where it met the requirements for an exemption or where "the release of any additional information would . . . provide no useful information, or [be] incomprehensible words or phrases." Myrick Decl. ¶ 49. Further, the DEA re-reviewed the documents and narrowed its redactions and withholdings, ECF No. 141-1 ¶ 17, which the Court then reviewed *in camera*. Based on the record and that review, the Court finds that the DEA redacted and withheld what it represents it did, and that any reasonably segregable portion of these records was provided to Marino.

## IV. Conclusion

For all the above reasons, Defendant's motion for summary judgment, ECF No. 136, will be granted, and Plaintiff's motion for summary judgment, ECF No. 130, will be denied. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 26, 2021